OPINION OF THE COURT
Donald J. Sullivan, J.
Defendant moves to suppress the results of a chemical blood test. Defendant was originally indicted for the crimes of manslaughter in the second degree and operating a motor vehicle under the influence of alcohol. By virtue of a superseding indictment, defendant was charged with the crimes of manslaughter in the second degree, criminally negligent homicide, operating a motor vehicle under the influence of alcohol and reckless driving.
The motion is denied and the court makes the following findings of fact and conclusions of law. At the Mapp hearing, the testimony disclosed that on January 26, 1977 at about 12:00 a.m. (midnight) the defendant was involved in a two-car collision in Bronx County resulting in the death of four individuals. Police Officer Peter Soldano responded to the scene and after having smelled the odor of liquor on defendant’s breath and observing three full and three empty beer cans in the interior of defendant’s car, placed defendant under arrest at about 12:10 a.m. Defendant was then taken by ambulance to Jacobi Hospital arriving at about 12:40 a.m. The hospital personnel, in the performance of its routine medical procedures, without request or order of the law enforcement authorities, extracted blood specimens from the defendant. Thereafter, at approximately 1:45 a.m., Police Officer Joseph Pontonio arrived at the hospital to perform the chemical tests for intoxication. After advising defendant of his rights required by section 1194 of the Vehicle and Traffic Law, defendant was requested to submit to a blood test. The defendant refused and Police Officer Pontonio complied with this direction. At or about 5:30 a.m., Police Officer Pontonio in full uniform, pursuant to direction of his superior officer went to the sixth floor hospital laboratory and requested the defendant’s blood samples. The hospital personnel handed over three vials of blood labeled with defendant’s name to Police Officer Pontonio. The blood samples were thereafter analyzed by a police laboratory, the results of which are the subject of this motion to suppress.
The principal issue, inter alia, is whether the warrantless *473 police seizure of the three vials of defendant’s blood violated defendant’s right to be free of an unreasonable search and seizure guaranteed by the Federal and State Constitutions (US Const, 4th Amdt; NY Const, art I, § 12).
 At the outset, basic to the law in this area, is the general interdiction that absent a warrant, a search and seizure is per se unconstitutional (Coolidge v New Hampshire, 403 US 443, 454). Requiring a warrant based on probable cause to be secured from a neutral Magistrate was designed to remove untrammeled discretion in the searcher and to "protect the right of privacy * * * the 'core’ of the Fourth Amendment” (People v Nieves, 36 NY2d 396, 401; see, also, Wolf v Colorado, 338 US 25, 27; Marron v United States, 275 US 192). Reinforcing this Federal Fourth Amendment protection is the formulated rule precluding the admission of evidence derived from an "unreasonable search and seizure” in State courts by operation of the Fourteenth Due Process Amendment (Mapp v Ohio, 367 US 643). But, the Constitution does not forbid all searches and seizures without a warrant, only unreasonable ones (People v Singleteary, 35 NY2d 528, 531; People v Loria, 10 NY2d 368; Harris v United States, 331 US 145, 150). Reasonableness depends upon all the facts and circumstances of each case (People v Kreichman, 37 NY2d 693; Cady v Dombrowski, 413 US 433, 440; Go-Bart v United States, 282 US 344; People v De Vito, 77 Misc 2d 463). The applicable test in the determination of a reasonable intrusion is to balance the need to search for evidence of criminal activity in the public interest against the individual’s invasion of privacy (People v Mitchell, 39 NY2d 173; Camara v Municipal Ct., 387 US 523; People v Velez, 88 Misc 2d 378). It is well settled that a search and seizure in the absence of a warrant is constitutionally reasonable if made in a few specific, well-delineated, exceptional circumstances (Katz v United States, 389 US 347, 357; Ker v California, 374 US 23; Coolidge v New Hampshire, 403 US 443, 481, supra).
Upon a review of the entire record, the court finds that the blood samples were extracted by hospital personnel with the expressed or implied consent of the defendant and without any reservation or right or interest to said blood. Further, that any refusal to submit to a blood test occurred after the consensual extraction of blood by the hospital personnel and said refusal cannot be retroactively applied to the original procedure. Accordingly, the court finds that the defendant had *474 no interest in the blood samples which were not in the possession of Jacobi Hospital. Therefore, the court concludes that the defendant has no standing to challenge the admissibility of the derivative chemical blood test evidence (see Jones v United States, 362 US 257). Even if the court was to find that the defendant had some interest in the blood, the motion to suppress would nevertheless be denied in that the court would find that the well-settled exception to a warrantless search and seizure has been established according to the consensual search theory.
The precise question as to who owns the blood upon extraction from an individual raises a novel point without apparent judicial precedent. Extensive research and review of the law in this area including study of the excellent, comprehensive briefs submitted by counsel for both parties has not elicited a definitive rule. The court is persuaded, nevertheless, based on its assessment of the case and statutory law and the facts in this case, assuming that defendant had an interest in the blood specimen in the vial containers, it was the joint, mutual property of defendant and the hospital (see, e.g., Schloendorff v Society of N. Y. Hosp., 211 NY 125; Public Health Law, §§ 17, 570, 571 et seq.; see, also, Board of Regents v Roth, 408 US 564; Gotkin v Miller, 379 F Supp 859, affd 514 F2d 125; Mental Hygiene Law, § 15.13, now § 33.13). The hospital’s consent to the warrantless search and seizure would therefore not be a bar to the admission of the featured evidence. Such finding is consistent with the rule that a third party’s voluntary consent is binding on an absent, nonconsenting defendant, where joint occupants share common authority over the premises or property (United States v Matlock, 415 US 164; People v Wood, 31 NY2d 975). It logically follows that any one of two or more persons having a mutual interest in the property may consent to or refuse to permit the warrant-less search and seizure. It is bottomed on the compelling principle that one who gives up sole and exclusive possession, control or ownership of property has, in effect, removed the constitutional talisman protecting his reasonable right of privacy (see, e.g., Katz v United States, 389 US 347, supra). Comparison with a bailor-bailee relationship is appropriate. The nature of the bailment in this case is one where the bailor defendant, for all intents and purposes, surrendered the blood to the hospital for tests without any thought of ever recovering the blood for his own use or purpose. Clearly, *475 defendant did not have sole or exclusive interest in the blood. In this analysis, we can see that the hospital’s mutual interest in the property enabled it to authorize a valid consent search. The freedom from an unreasonable search and seizure guaranteed under the Fourth Amendment is a personal right, privilege and immunity. It does not protect an absent defendant from a search and seizure directed against a consenting third party notwithstanding evidence incriminating defendant is uncovered thereby (United States v Eldridge, 302 F2d 463; United States v Birrell, 470 F2d 113). A somewhat analogous case, the State of Washington Court of Appeals in State v Smith (12 Wash App 720) held that a hospital had at least joint control over a hospital patient’s clothes which the patient turned over to the hospital representative and then allowed them to be placed outside his room in a public area. The patient’s conduct constituted a relinquishment of exclusive control and thus enabling the hospital to validly consent to a search of said clothes.
The court further notes that the Jacobi Hospital’s (a municipal hospital) consent is not a question of agency (Roberts v United States, 332 F2d 892) but an act performed in its own capacity. The record is clear that the hospital employee was not connected with the police, nor was he a security-type municipal employee, nor was he acting under the domination or control of the police (People v Horman, 22 NY2d 378; People v Blackman, 81 Misc 2d 12, 16; People v Kemp, 59 AD2d 414, 420; People v Bowers, 72 Misc 2d 800). He acted in his capacity as a private citizen, albeit a municipal worker, when he handed over the blood vials to the police. The record indicates that the uniformed Police Officer Pontonio, upon entering the sixth floor hospital laboratory asked the hospital personnel if he had any blood belonging to Mr. Dolan. The employee said "yes” and handed the vials of defendant’s blood to the officer. At the time the hospital consented to the search and seizure of the blood, it had exclusive or joint control of the subject matter. Although it could not waive the defendant’s constitutional rights, it could properly consent in its own right to the search and seizure provided it was voluntary.
From the totality of circumstances, the court finds that there was no coercion, duress, compulsion or force exercised by Police Officer Pontonio in taking possession of the blood. Accordingly, the court concludes there was no abridgement of defendant’s Fourth Amendment rights inasmuch as the Peo *476 pie have met their heavy burden of establishing a valid warrantless search based upon voluntary consent by the hospital (People v Whitehurst, 25 NY2d 389; People v Malinsky, 15 NY2d 86; People v Berrios, 28 NY2d 361).
Although the issue as to probable cause to arrest does not now arise as the seizure is being upheld under the consensual search and seizure exception to the exclusionary rule which is a "valid substitute for probable cause” (People v Hodge, 44 NY2d 553, 559), the court, nevertheless, will address itself to this question (cf. People v Morales, 42 NY2d 129). Probable cause has been explained in Brinegar v United States (338 US 160, 175), in this manner: "[A]s the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.” (See Draper v United States, 358 US 307.) The standard is evaluated through the eyes of a " 'reasonable, cautious and prudent police officer’ ” (People v Valentine, 17 NY2d 128, 132; citing People v Brady, 16 NY2d 186, 189).
Here, the investigating police officer who arrived within moments of the serious accident, smelled the liquor on defendant’s breath and observed the six full and empty beer cans on the floor of the car. The officer, in his professional capacity from the array of the general events at the scene, had reasonable grounds to believe that the defendant was guilty of the crime or crimes charged.
Assuming, arguendo, that the facts' here would not sustain the warrantless search and seizure under the "consent” exception, the court, in any event, would uphold the search and seizure under the "inevitable discovery” exception. Under the rationale of People v Fitzpatrick (32 NY2d 499, cert den 414 US 1033), this court is of the opinion that there exists no constitutional infirmity in the search and seizure. The Court of Appeals, in Fitzpatrick, advanced the doctrine of "inevitable discovery” as an exception to the exclusionary rule, stating on page 506: "[EJvidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence.” (See Nardone v *477 United States, 308 US 338; Wong Sun v United States, 371 US 471; Brown v Illinois, 422 US 590.)
In substance, the court approved the admission of evidence seized without first obtaining a judicially sanctioned warrant on the concept that such evidence would have eventually been uncovered in the normal course of investigation by legal means. The court (supra, p 507) emphasized that the burden was on the prosecution to establish that "the illegal act was not a sine qua non of the discovery of the otherwise tainted evidence.” In the present case, an essential piece of evidence in the prosecution’s proof was the results of the blood test. It is undisputed that the sovereign was actively pursuing the investigation and all the incidents thereto. There came a time during the course of the investigation that the subject blood was in the hospital laboratory. Implicit in the discovery is a finding of a continued investigation. Armed with the result of its investigation, i.e., probable cause to arrest and knowledge of the whereabouts of material evidence, the sovereign would have inevitably procured the subject matter of this motion to suppress (see People v Quattrachi, 63 AD2d 655; United States v Coplon, 185 F2d 629, cert den 342 US 920).
The other points raised by the defendant, viz., chain of custody, subdivision 2 of section 1194 of the Vehicle and Trafiic Law, physician-patient privilege (CPLR 4504) are not appropriate matter for determination at a Mapp hearing. The purpose of such suppression hearing "is not to determine guilt or innocence but to ascertain whether the police had lawful cause to take the action which led to the arrest and seizure” (People v Merola, 30 AD2d 963). The issues thus posed are best left for the trial court’s review and decision.
In view of the foregoing, the motion to suppress the evidence is denied.