**STATE of Missouri, Plaintiff-Appellant,**

v.

**Richard D. COPELAND,**
**Defendant-Respondent.**

No. 13668.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 16, 1984.

Motion for Rehearing Overruled and to
Transfer to Supreme Court Denied
Nov. 2, 1984.

Application to Transfer Denied
Dec. 18, 1984.

William J. Fleischaker, Pros. Atty., Joplin, for plaintiff-appellant.

Laurence H. Flanigan, Thad C. McCanse, William J. Lasley, Carthage, for defendant-respondent.

PREWITT, Chief Judge.

Defendant is charged with driving a motor vehicle while intoxicated. The state appeals from the trial court's order sustaining defendant's motion to suppress. See § 547.200, RSMo Supp.1983. At issue is whether the police's seizure without a warrant of a sample of defendant's blood from a hospital was improper under the fourth amendment to the United States Constitution and article I, § 15 of the Missouri Constitution.

A vehicular collision was reported to the Joplin Police Department at approximately 1:30 a.m. on Thursday, January 27, 1983. The traffic officer sent to investigate arrived at the scene between 1:45 and 2:00 a.m. Defendant was the only occupant of a van, one of the two vehicles involved. He was pinned in the van when the officer first observed him. The officer smelled alcohol "about the area" where defendant was and saw "Bloodymary mix, two bottles hanging out" of the van. Defendant was severely injured in the collision. He was unconscious at least part of the time until removed from the vehicle and taken to a local hospital.

The officer concluded that the collision was caused by the other vehicle crossing the centerline of the highway and going into the lane in which defendant's vehicle was traveling. The investigation did not reveal any improper driving on defendant's part. Due to their injuries the officer could not tell if either driver's ability to operate a motor vehicle was impaired by intoxicants.

Between 2:30 and 3:00 a.m., at the request of an attending physician in the emergency room at the hospital, a laboratory technician drew blood samples from defendant. Defendant was admitted to the hospital in serious condition. At approximately 9:00 a.m. a police officer went to the laboratory of the hospital and requested that he be given a sample of defendant's blood. A medical technologist gave him one of the samples. The technologist testified that the hospital's laboratory had completed its testing of the blood and after 24 hours it would have been discarded.

The state contends that the trial court erred in sustaining defendant's motion to suppress because defendant had no standing to complain that the seizure was improper as he had no reasonable and legiti-

mate expectancy of privacy in the sample of the blood; that even if defendant had standing the seizure was lawful because an authorized person consented to the seizure; and that defendant must be held to have consented to the seizure because § 577.020, RSMo Supp.1982 provides that a person operating a motor vehicle is deemed to have consented to a test of his blood. In argument the state said it did not rely on "exigent circumstances" to support the seizure.

■ To complain of a violation of the fourth amendment of the United States Constitution or article I of § 15 of the Missouri Constitution, defendant must have a "legitimate expectation of privacy" in the place or thing being searched. *State v. McCrary*, 621 S.W.2d 266, 272 (Mo. banc 1981). That is determined by a two part test. First, the defendant must have an actual subjective expectation of privacy in the place or thing searched. Second, the expectation of privacy must be "reasonable" or "legitimate". *Id.*, 621 S.W.2d at 273.

■ There is no standing to complain of something voluntarily discarded, left behind, or otherwise relinquished, as a party no longer retains a reasonable expectancy of privacy with regard to it. *Id.*, 621 S.W.2d at 273.

■ As defendant was seriously injured and unconscious at the time the blood was taken, his consent to the taking for medical purposes can be implied. 61 Am.Jur.2d, Physicians, Surgeons, and Other Healers, § 185, p. 314. However, that consent would be limited to medical treatment and no consent can be implied for its use for other purposes.

■ At the time the blood was taken, defendant had an expectancy of privacy in the contents of his blood which Missouri law recognized as legitimate. Our law prevented the results of tests of it for medical purposes from being used against him in criminal proceedings. See § 491.060(5), RSMo 1978 (since amended), as applied in *Gonzenbach v. Ruddy*, 645 S.W.2d 27 (Mo. App.1982), and *State ex rel. Mehle v. Harper*, 643 S.W.2d 643 (Mo.App.1982).[1] Those cases involved records showing the test results of blood samples, but we see no reason why blood, and test results from it, should not be treated the same.

Whether the expectation of privacy in blood or the results of tests on it has now been changed, see § 577.037.1, RSMo Supp. 1983, we do not decide as that statute was enacted after defendant's blood was taken.[2] Nor is it necessary to consider if that section might be applied to evidence of events occurring before its effective date. This discussion is concerned with the reasonable expectancy of privacy at the time of the consent and not whether the blood or results of its testing would be admissible if otherwise properly received by the police.

■ The blood was taken at the direction of a physician for use in testing for medical purposes and the implied consent is limited to those purposes. By consenting to the blood being taken for medical reasons, defendant has not consented to it being used for other purposes, nor has he granted to hospital personnel the right to

1. New Jersey has recently decided to balance a patient's interest in the confidentiality of hospital records of blood testing by requiring that a reasonable basis to believe that the operator was intoxicated be shown before they can be used. *State v. Dyal*, 97 N.J. 229, 478 A.2d 390 (1984).

2. Section 577.037.1, RSMo Supp.1983 states: "Upon the trial of any person for violation of any of the provisions of section 577.005, 577.-008, 577.010, or 577.012, or upon the trial of any criminal action or violations of county or municipal ordinances arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence and the provisions of subdivision (5) of section 491.060, RSMo, shall not prevent the admissibility or introduction of such evidence if otherwise admissible. If there was ten-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.

do with it as they will. Following the law and common practice, it is normally expected that a patient's disclosures to a hospital will be kept confidential. Absent legal process a hospital has a duty to release a patient's privileged information only to those authorized by the patient to receive it. *Thurman v. Crawford,* 652 S.W.2d 240, 242 (Mo.App.1983). It was reasonable to anticipate that when the hospital was through with the blood it would be discarded in a manner maintaining confidentiality.

The state relies extensively on *People v. Dolan,* 95 Misc.2d 470, 408 N.Y.S.2d 249 (1978). Except that probable cause that the defendant was operating a vehicle under the influence of alcohol was present, the facts are similar. There, at the request of a police officer without a warrant, hospital personnel surrendered blood samples of the defendant previously taken for medical reasons.

The court in *Dolan* found that the defendant gave the samples without any reservation of right or interest to the blood and that he had no standing to challenge the admissibility of the test taken of it. The court determined that the blood specimen was the "joint, mutual property of defendant and the hospital" and that the hospital's consent was sufficient to authorize the police to seize it. The opinion states that its ruling is "consistent with the rule that a third party's voluntary consent is binding on an absent, nonconsenting defendant, where joint occupants share common authority over the premises or property". It concludes that "one who gives up sole and exclusive possession, control or ownership of property has, in effect, removed the constitutional talisman protecting his reasonable right of privacy". 408 N.Y.S.2d at 252.

Putting objects in someone else's purse or bag, or otherwise placing them to be carried or physically held by another or leaving items in premises with joint access may extinguish any expectation of privacy as to that object. However, an expectation of privacy still exists when information or samples are given to a hospital. Traditionally, and as provided by law, information received by a hospital from a patient related to treatment is kept confidential. Placing the goods in another's effects or on joint premises is done with knowledge that they could allow someone to search their property or enter the premises. That decision is generally not regulated by law. A hospital by custom and law is held to a higher standard of confidentiality. It can be expected that hospitals will have rules for their personnel by which they will only disclose such information with patient authorization, or as required by warrant or other court document.

We do not agree that allowing a sample of blood to be taken gives up the expectation to or the right of privacy to it or its testing. That they would be given to law enforcement personnel is not expected when blood samples are taken as an aid to medical care. For the above reasons we decline to follow *Dolan.*[3]

■ Defendant cannot be deemed to have given consent to the seizure of his blood under § 577.020, RSMo Supp.1982 (since amended). That section provides consent if the person operating the vehicle is "arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition." § 577.020.1, RSMo Supp.1982.

At the time the blood was drawn from him and when it was seized defendant had

---

**3.** *Dolan* relies in part upon *State v. Smith,* 12 Wash.App. 720, 531 P.2d 843 (1975), holding a seizure of a hospital patient's clothes put in a joint area not to violate the fourth amendment. That holding has been criticized and not followed. See *Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978), cert. denied, 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94, reh'g denied, 440

U.S. 969, 99 S.Ct. 1522, 59 L.Ed.2d 785 (1979). See also *Morris v. Commonwealth,* 208 Va. 331, 157 S.E.2d 191 (1967). (Holding that seizure of hospital patient's clothing is in violation of the rights provided by the fourth amendment to the United States Constitution.) Our holding is limited to the seizure of blood at the time taken.

not been arrested and there was no probable cause to believe that he had committed any offense. At best the police could only speculate that the defendant might have consumed alcoholic beverages. No containers of alcoholic beverages were in defendant's van and there was no evidence of alcohol on his breath or of improper driving on defendant's part.

Under § 577.020.1, RSMo Supp.1982, arrest upon probable cause is a prerequisite to the consent being deemed. If probable cause existed only after the blood was seized it came too late to make consent valid. To allow probable cause shown later to relate back would eliminate it as a requirement. Also, as the state acknowledges, the procedures required by that section were not followed when the blood was drawn from defendant. Thus, we need not decide whether a person must always be arrested before there is consent to having the blood taken or tested or whether defendant's physical condition affected the arrest requirement.[4]

We conclude that the trial court correctly sustained defendant's motion and affirm its order so ruling.

HOGAN, P.J., and CROW, J., concur.

MAUS, J., recused.

---

[4]. Missouri has not expressly eliminated the necessity of arrest for the consent of a person dead, unconscious or otherwise in a condition incapable of refusing to take a test, although they are deemed not to have withdrawn the consent. § 577.033, RSMo Supp.1982 (since amended, see RSMo Supp.1983). Some states have enacted statutes eliminating arrest as a requirement to consent, when a vehicle operator is in a condition that makes an arrest difficult or impossible. See *Galvan v. State,* 655 P.2d 155, 156 (Nev.1982); *State v. Boner,* 186 N.W.2d 161, 163 (Iowa 1971).