**STATE of Missouri, Plaintiff–Appellant,**

v.

**Floyd PORTER, Defendant–Respondent.**

No. 16662.

Missouri Court of Appeals,
Southern District,
Division Two.

July 3, 1990.

David B. Summers, Pros. Atty., David A. Dolan, Asst. Pros. Atty., Benton, for plaintiff-appellant.

Philip R. Pruett, Sikeston, for defendant-respondent.

HOGAN, Judge.

By information filed in the Circuit Court of Scott County, defendant was charged with knowingly possessing lysergic acid diethylamide (LSD) in violation of § 195.020, RSMo 1986. The defendant filed a motion to suppress evidence in accordance with § 542.296, RSMo 1986, because the warrant under which the evidence was seized was issued without probable cause in violation of § 542.280.10(3), RSMo 1986. The motion was sustained and the State appealed as provided by § 547.200.1(2), RSMo 1986. We reverse.

The warrant was issued upon the application of Mark Hagen, identified as an employee of the Sikeston, Missouri, Department of Public Safety. We shall refer to that department as the Police Department. Very briefly, the application states that the affiant—Hagen—believed that narcotics or other controlled substances were presently in possession of the United States Postal Service for delivery to the defendant at his request. It was further stated that the basis for the affiant's belief was contained in the affidavits of witnesses attached and incorporated into the application. The prayer or request of the application was that a search warrant issue authorizing a search of the contents of a package received by the United States Postal Service in Sikeston on July 22, [sic] 1988, for delivery to the defendant. It was requested that the warrant authorize search of the package after delivery to the defendant.

Two affidavits were attached to the application. The affidavit of Captain Joe Sebourn fairly summarizes the information upon which the Sikeston Police Department relied to establish probable cause. Captain Sebourn stated that he was a police officer and that he had received information from an informant who had in the past provided reliable information concerning criminal activity in the City of Sikeston and in Scott County, Missouri. On July 1, 1988, this informant told Sebourn that the defendant was going to receive a package containing narcotics or controlled substances. The package had been sent from Michigan by overnight express. Sebourn was advised

that the package would bear an eagle as a symbol or "logo" identifying the express agency which sent the package. The informant had further advised Sebourn that the package would be coming into Sikeston very shortly. Sebourn had advised the Postal Service that the defendant would probably receive the overnight express package from an address in Michigan; on July 2, the postmaster advised the Sikeston Police Department that the defendant had received an overnight express package from one Ervin Kimber of 80 East Lakewood Blvd., Holland, Michigan. The warrant was executed in a parking lot adjacent to the Sikeston Post Office.

The defendant moved to suppress the evidence, principally on the ground that the warrant was issued without probable cause. A hearing was had on the motion to suppress and the trial court gratuitously made the following finding:

"This Court believes the current state of the law to be that even an uncorroborated anonymous tip can be sufficient for the issuance of a search warrant if the tip is of such great detail and of such apparent intimacy that the basis of knowledge overcomes the lack of reliability aspect. Furthermore there would have to be a great deal of self-verification of the details contained in the tip. This Court does not believe the case dealt with here reaches that level.

The chief problem is that this case allows for a 'frame-up' of an innocent person. The anonymous tipster could under similar facts as these in this case be using police officers to have an enemy arrested for possession of controlled substances. The simple scenario is as follows: 'The anonymous tipster has narcotics mailed to his enemy. The enemy is informed that he has won a prize and is to receive a package at the post office the following day by overnight express. Meanwhile the anonymous tipster notifies the police that narcotics are in the package and all the details surrounding the mailing of the package. A search warrant is issued on this information. The unsuspecting enemy picks up his package containing what he thinks is his prize. The police immediately serve the search warrant on him and find the narcotics in the package. The enemy of the anonymous tipster is then arrested for possession of controlled substances. The enemy is then faced with proving he had no knowledge that the contents of the package was a controlled substance. The result of course is that an innocent person could be convicted of a crime he did not commit. A nice little scam for the anonymous tipster who wants his enemy out of the way, a seemingly clear cut case for the police, but a nightmare for the innocent man who could be you, me or anyone'. End of story."

Despite the remote contingencies with which the trial court was concerned, the merits of the motion to suppress do not turn upon the legality of the search warrant. The broader and dispositive question is whether the defendant's Fourth Amendment rights were infringed by the search of the express package. At the hearing on the motion to suppress, Officer Mark Crocker testified he was in the Sikeston Post Office when the defendant arrived to pick up his package. After the defendant left the Post Office, Crocker and another officer followed him onto the parking lot. Crocker testified as follows:

\*   \*   \*   \*   \*   \*

"Q. As you then exited the building, what did you do?

A. We approached Mr. Porter and informed him that we had a search warrant for the package.

Q. Did he make any movements or do anything at that time?

A. Upon turning around and seeing us, he flipped the package off to the side.

Q. And when you say 'flipped it off to the side,' what did he—Where did he flip it to?

A. Just kind of threw it down or tossed it down, you know, in pretty close proximity, but just away from him.

Q. And did it, in fact, fall down to the ground?

A. Yes, sir.

Q. Was Mr. Porter placed under arrest at that time?

A. Not until after we executed the search warrant and seen what was inside the package."

\*   \*   \*   \*   \*   \*

 The Fourth Amendment requirement that searches and seizures be conducted pursuant to a properly issued search warrant is subject to a number of exceptions. One of these exceptions prevents individual persons from effectively contesting the legality of the search or seizure of an item of personal property which has been abandoned. *State v. Quinn*, 565 S.W.2d 665, 671 (Mo.App.1978); Annot., 40 A.L.R.4th 381, 388 § 2[a] (1985). The expression and operation of the "abandonment" rule has varied from time to time and from court to court. Annot., *supra*, 40 A.L.R.4th at 388.

 In this jurisdiction, it has been held that to complain of a violation of the Fourth Amendment or Mo. Const. Art. I, § 15, a defendant must have a "legitimate expectation of privacy" in the place or thing being searched, and a defendant has no standing to complain of the search or seizure of something voluntarily discarded, left behind, or otherwise relinquished, as a party no longer retains a reasonable expectancy of privacy with regard to it. *State v. McCrary*, 621 S.W.2d 266, 272–73 (Mo. banc 1981); *State v. Copeland*, 680 S.W.2d 327, 329 (Mo.App.1984); *State v. Achter*, 512 S.W.2d 894, 899 (Mo.App.1974). Abandonment, for Fourth Amendment purposes, has quite often been found when a pedestrian, approached or hailed by police officers, has intentionally dropped or disposed of personal property, including containers. Annot., 40 A.L.R.4th at 392–402 §§ 3, 4. The cases cited by the defendant, *State v. Ross*, 507 S.W.2d 348, 353 (Mo. 1974), and *State v. Lorenzo*, 743 S.W.2d 529, 531 (Mo.App.1987), do not aid him. In both those cases, the defendants claimed some species of ownership of the clothing or containers which were searched. The present defendant made no such claim of ownership here. The defendant's readiness to depart the scene, leaving the container behind and in the control of no one, can and should have been considered as abandonment for Fourth Amendment purposes, leaving him without standing to complain. 4 *W. LaFave, Search and Seizure*, § 11.3(f) pp. 343–44 (1987). The judgment or order appealed from is reversed.

FLANIGAN, P.J., and MAUS, J., concur.

SHRUM, J., not participating because not a member of the court when case was submitted.