Rel: February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

### CR-20-0821

_____

## Broderick Darnell McCoy

### v.

## State of Alabama

## Appeal from Russell Circuit Court
## (CC-15-614.60)

On Return to Remand

McCOOL, Judge.[1]

_____

[1]This case was originally assigned to another judge on this Court. It was reassigned to Judge McCool on September 28, 2022.

In December 2018, Broderick Darnell McCoy was convicted of first-degree assault, a violation of § 13A-6-20, Ala. Code 1975, and was sentenced, as a habitual felony offender, to 99 years' imprisonment. On March 6, 2020, this Court affirmed McCoy's conviction and sentence in an unpublished memorandum, see McCoy v. State (No. CR-18-0559), 322 So. 3d 1074 (Ala. Crim. App. 2020) (table), and the certificate of judgment issued on September 11, 2020, following the Alabama Supreme Court's denial of certiorari review. In March 2021, McCoy filed a petition for postconviction relief pursuant to Rule 32, Ala. R. Crim. P. The Russell Circuit Court denied that petition, and McCoy has appealed the circuit court's judgment.

Facts and Procedural History

While driving in Phenix City on February 16, 2013, McCoy struck a pedestrian with his vehicle, causing significant injuries to the pedestrian. At the scene of the accident, Sgt. Anthony Roberts of the Phenix City Police Department spoke with McCoy, who initially claimed that he did not need medical treatment. However, when Sgt. Roberts found an open can of beer in McCoy's vehicle, McCoy asked to be taken to a hospital for medical treatment. As McCoy was being loaded into an

ambulance, Sgt. Roberts asked him to consent to a blood test, but McCoy refused.

Once he was in the ambulance, McCoy provided the attending paramedic with only "minor complaints" (Record on Direct Appeal ("RDA"), R. 21), and he admitted to the paramedic that he had asked to be taken to a hospital because "he was afraid that he was going to go [to] jail" (RDA, R. 36), not because he needed medical treatment. Although McCoy admitted that he did not need or desire medical treatment, he consented to the paramedic's request for blood samples to be used "for medical treatment purposes." (RDA, R. 23.) However, when McCoy arrived at the hospital, he became "disruptive" (RDA, R. 42) and, according to the circuit court, refused medical treatment and left the hospital. The vials of McCoy's blood that had been drawn in the ambulance were then discarded into a locked hazardous-waste container without any tests having been conducted on the blood.

A little more than two hours after McCoy left the hospital, Sgt. Roberts went to the hospital and asked a nurse if McCoy's blood had been drawn, and the nurse informed him that the vials containing McCoy's blood had been discarded into the hazardous-waste container. The nurse

3

then showed Sgt. Roberts where the hazardous-waste container was located, and, without obtaining a warrant, Sgt. Roberts "broke open the container" (RDA, R. 132), retrieved the vials of McCoy's blood, and submitted the blood to the Department of Forensic Sciences, which tested the blood to determine McCoy's blood-alcohol content ("BAC"). That test revealed that McCoy's BAC was 0.29 percent, which is more than three times the legal limit for the driver of a vehicle. See § 32-5A-191(a)(1), Ala. Code 1975. McCoy was subsequently arrested and charged with first-degree assault pursuant to § 13A-6-20(a)(5), which provides, in pertinent part, that a person commits first-degree assault if, "[w]hile driving under the influence of alcohol … in violation of Section 32-5A-191 …, he or she causes serious physical injury to the person of another with a vehicle or vessel."

Before trial, McCoy's counsel moved to suppress the BAC test results, arguing (1) that the State could not establish a proper chain of custody for McCoy's blood; (2) that, because McCoy had not been arrested before the BAC test was conducted, Alabama's implied-consent statute did not operate to provide his consent to the BAC test, see § 32-5-192, Ala. Code 1975; and (3) that the blood "was not contained in conformance

with the required and accepted standards enumerated in [§ 32-5A-194(a)(2), Ala. Code 1975]" (RDA, C. 55), which, at the time of McCoy's offense, provided that "only a physician or a registered nurse (or other qualified person) may withdraw blood for the purpose of determining the alcoholic content therein." The trial court denied that motion, and McCoy was subsequently convicted of first-degree assault.

In March 2021, McCoy filed the instant Rule 32 petition, in which he argued that his counsel had rendered ineffective assistance by failing to assert the Fourth Amendment to the United States Constitution as a basis for suppressing the BAC test results. In support of that claim, McCoy argued that the State's warrantless seizure and testing of his blood violated the Fourth Amendment, which prohibits unreasonable seizures and searches by the State, State v. Harris, 159 So. 3d 86, 90 (Ala. Crim. App. 2014), and that the BAC test results were "without question … the most compelling evidence against [him] at trial." (C. 12.) Thus, according to McCoy, his counsel rendered "clearly deficient" assistance by failing to raise a Fourth Amendment claim. (C. 15.)

The circuit court summarily dismissed McCoy's ineffective-assistance-of-counsel claim based on its finding that the admissibility of

the BAC test results had been "addressed at a pretrial suppression hearing" and that, as a result, McCoy's counsel had "t[aken] the action which she allegedly failed to take." (C. 22.) McCoy appealed, arguing that, although his counsel had indeed moved to suppress the BAC test results, she had not raised a Fourth Amendment claim in doing so and, thus, contrary to the circuit court's finding, had not "t[aken] the action which she allegedly failed to take." This Court agreed with McCoy, noting that it had refused to consider his Fourth Amendment claim on direct appeal because the claim had not been raised at trial and therefore had not been preserved for appellate review. Thus, on December 7, 2021, this Court remanded the case to the circuit court for that court to consider McCoy's ineffective-assistance-of-counsel claim.

On February 24, 2022, the circuit court denied McCoy's ineffective-assistance-of-counsel claim on the basis that it would have denied the motion to suppress the BAC test results even if McCoy's counsel had raised a Fourth Amendment claim. In support of that ruling, the circuit court stated:

> "This court finds that [McCoy] abandoned his blood samples when he left the hospital after refusing treatment. Law enforcement obtained the abandoned samples from a 'Sharps container,' [i.e., the hazardous-waste container,] which was

6

also referred to at a suppression hearing as a 'garbage can.' The Fourth Amendment does not extend protections to abandoned properties discarded into a 'garbage can' in a public location."

(Record on Return to Remand, C. 17.) This Court then allowed the parties to submit supplemental briefs on return to remand.

## Standard of Review

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-prong test that a defendant must satisfy in order to prevail on an ineffective-assistance-of-counsel claim: the defendant must show (1) that his "counsel's performance was deficient" and (2) that "the deficient performance prejudiced the defense." To satisfy the first prong of the <u>Strickland</u> test, the defendant "must show that his counsel's representation fell below an objective standard of reasonableness." <u>Ex parte Lawley</u>, 512 So. 2d 1370, 1372 (Ala. 1987).

## Discussion

On appeal, McCoy argues that the circuit court erred by denying his ineffective-assistance-of-counsel claim. In support of that argument, McCoy continues to allege that the State's warrantless seizure and testing of his blood violated the Fourth Amendment and that the BAC test results were "without question … the most compelling evidence

7

against [him] at trial." (McCoy's brief, p. 15.) Thus, according to McCoy, his counsel rendered clearly ineffective assistance by failing to raise a Fourth Amendment claim. Because McCoy's ineffective-assistance-of-counsel claim is based on his counsel's failure to raise a specific claim at trial, we begin our analysis by looking at the substance of the underlying claim because, if that claim lacks merit, then McCoy's ineffective-assistance-of-counsel claim fails. See Lee v. State, 44 So. 3d 1145, 1173 (Ala. Crim. App. 2009) ("Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.").

To prevail on a claim that the State's warrantless seizure and search of an item violated the Fourth Amendment, the claimant must show that he had "a subjective expectation of privacy" in the item and that this expectation is one "that society accepts as objectively reasonable." California v. Greenwood, 486 U.S. 35, 39 (1988). See also Minnesota v. Carter, 525 U.S. 83, 88 (1998) ("'[C]apacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" (quoting Rakas v. Illinois, 439 U.S. 128,

143 (1978))); Calhoun v. State, 932 So. 2d 923, 938 (Ala. Crim. App. 2005) ("'The Fourth Amendment protects only reasonable expectations of privacy.'" (quoting Ex parte Hilley, 484 So. 2d 485, 489 (Ala. 1985))); and United States v. Stokes, 829 F.3d 47, 51 (1st Cir. 2016) (holding that the defendant's "inability to demonstrate a reasonable expectation of privacy in the items searched and seized [was] fatal to his [Fourth Amendment] claim"). Thus, the threshold legal question in McCoy's Fourth Amendment claim is whether he had an objectively reasonable expectation of privacy in the blood that the State seized from the hospital and tested for BAC.[2] McCoy argues that he did and, in support of that argument, cites Schmerber v. California, 384 U.S. 757 (1966), Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989), State v. Funk, 177 Ohio App. 3d 814, 896 N.E.2d 203 (2008), and State v. Martinez, 570 S.W.3d 278 (Tex. Crim. App. 2019).

---

[2]Whether McCoy had a subjective expectation of privacy in the blood is a question of fact; whether that subjective expectation is one that society accepts as objectively reasonable is a question of law. United States v. Douglas, 744 F.3d 1065, 1069 (8th Cir. 2014); United States v. Vasquez-Padilla, 330 F. App'x 883, 887 (11th Cir. 2009) (not selected for publication in the Federal Reporter).

In Schmerber, the defendant was arrested for driving under the influence of alcohol while he was receiving treatment at a hospital following an automobile accident. At the direction of a law enforcement officer who did not have a warrant, hospital personnel drew the defendant's blood, which, when tested, indicated that he was intoxicated. At trial, the defendant objected to the admission of the BAC test results, arguing that he had not consented to the drawing of his blood and that, as a result, the State's warrantless seizure and testing of the blood constituted an unlawful search in violation of the Fourth Amendment. The United States Supreme Court ultimately held that the State had not violated the Fourth Amendment because exigent circumstances justified the warrantless search. However, the Court reached that conclusion only after noting that the State's "compelled intrusion[ ] into the human body for blood to be analyzed for alcohol content," 384 U.S. at 768, is an act that "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." Id. at 767.

In Skinner, the United States Supreme Court considered whether the Federal Railroad Administration had violated the Fourth Amendment when it promulgated a regulation that required railroad

companies to collect blood and urine samples from any employees who were involved in certain train accidents. The Court ultimately upheld the regulation under the "special needs" exception to the warrant requirement, 489 U.S. at 619, but, in doing so, the Court reiterated that "a 'compelled' ... physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." Id. at 616.

In short, both Schmerber and Skinner acknowledged the reasonable expectation of privacy a person has in his blood, but, at the same time, both cases were concerned with the State's warrantless "intrusions into the human body" to obtain the blood. Schmerber, 384 U.S. at 767 (emphasis added). In this case, there was no State or State-ordered intrusion into McCoy's body because he voluntarily provided his blood to medical personnel for the purpose of medical treatment. Whether a person has a reasonable expectation of privacy in blood that he voluntarily provides to another is a question not answered by either Schmerber or Skinner, and we have not found any case from the United States Supreme Court, the Alabama Supreme Court, or this Court that answers the question. Funk and Martinez arguably answer that

11

question in McCoy's favor, although we note that <u>Martinez</u> did not involve the defendant's voluntary relinquishment of his blood, but those cases from Ohio and Texas, respectively, are not binding authority in Alabama. <u>Simcala, Inc. v. American Coal Trade, Inc.</u>, 821 So. 2d 197, 202 (Ala. 2001). And, although some might find the answer unquestionably to be 'yes,' at least two other courts have reached the opposite conclusion, thus indicating that the issue has not been uniformly settled among other jurisdictions. <u>See</u> <u>People v. Dolan</u>, 95 Misc. 2d 470, 474, 408 N.Y.S.2d 249, 252 (N.Y. Sup. Ct. 1978) (holding that the defendant had no reasonable expectation of privacy in blood that he had voluntarily provided to hospital personnel for the purpose of medical treatment and noting that "[t]he precise question as to who owns the blood upon extraction from an individual raises a novel point without apparent judicial precedent" or "a definitive rule"); and <u>State v. Bazinet</u>, 170 N.H. 680, 184 A.3d 448 (2018) (holding that the defendant had no reasonable expectation of privacy in blood that had been drawn by hospital personnel for the purpose of medical treatment).

In other words, whether McCoy had an objectively reasonable expectation of privacy in blood that he voluntarily provided to medical

12

personnel for the purpose of medical treatment is a legal question of first impression in Alabama. That fact is important because it must be remembered that the issue before this Court is not simply whether the State violated the Fourth Amendment. Instead, the issue is whether McCoy's counsel rendered ineffective assistance by failing to assert the Fourth Amendment as a basis for suppressing the BAC test results. Thus, because Strickland requires that counsel's representation meet only "an objective standard of reasonableness," Ex parte Lawley, 512 So. 2d at 1372, the dispositive question in this case is whether it was objectively unreasonable for McCoy's counsel to fail to raise a Fourth Amendment claim that hinges on a legal question of first impression.

We have not found an Alabama case that expressly answers this question. However, this Court has acknowledged that a defendant's counsel "'cannot be deemed ineffective for failing to forecast changes in the law,'" State v. Mitchell, [Ms. CR-18-0739, Feb. 11, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (quoting State v. Tarver, 629 So. 2d 14, 18-19 (Ala. Crim. App. 1993)), which suggests that the reasonableness of counsel's failure to raise a particular claim must be evaluated in light of the settled law that existed at the time the claim allegedly should have

13

been raised. And other jurisdictions, both federal and state, have expressly held that counsel cannot be deemed ineffective for failing to raise a claim that hinges on a legal question of first impression or, stated differently, for failing to raise a claim that would have necessarily required counsel to advance novel arguments based on unsettled questions of law. See Ragland v. United States, 756 F.3d 597, 601 (8th Cir. 2014) ("Ragland's 'counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts,' Fields [v. United States], 201 F.3d [1025,] 1028 [(8th Cir. 2000)], and failure to raise a 'novel argument' based on admittedly unsettled legal questions 'does not render his performance constitutionally ineffective,' Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005)."); United States v. Glover, 872 F.3d 625, 631 (D.C. Cir. 2017) ("[C]ounsel was not ineffective for failing to raise a challenge of uncertain merit based on unsettled law."); United States v. Morris, 917 F.3d 818, 823 (4th Cir. 2019) ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent. See United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) ('We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot

contentions.'"). Nor does counsel fall below <u>Strickland</u>'s standard of reasonableness by failing … to argue for an extension of precedent."); <u>United States v. Slape</u>, 44 F.4th 356, 360 (5th Cir. 2022) ("Because no … 'directly controlling precedents' were available to Slape's trial counsel here, he could not have flunked [the <u>Strickland</u>] test. As we've consistently observed, the Sixth Amendment's reasonableness standard does not require counsel to guess correctly on questions of first impression, but merely to present 'directly controlling precedents' in support of meritorious arguments their clients might beneficially advance." (footnote and citation omitted)); <u>Anderson v. United States</u>, 633 F. App'x 520, 523 (11th Cir. 2015) (not selected for publication in the Federal Reporter) ("An … attorney may render objectively unreasonable performance by ignoring a well-defined legal principle, but an error in judgment concerning an unsettled principle generally will not be considered deficient performance."); <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999) (noting that "[i]gnorance of well-defined legal principles is nearly inexcusable" but that "'the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized'" (quoting 2 Ronald E. Mallen & Jeffrey M. Smith,

15

Legal Malpractice § 17.1, at 497)); State v. Breitzman, 378 Wis. 2d 431, 457, 904 N.W.2d 93, 105-06 (2017) ("[F]or trial counsel's performance to have been deficient, Breitzman would need to demonstrate that counsel failed to raise an issue of settled law."); Ex parte Chandler, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005) ("[C]ounsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law." (citation omitted)); Olsen v. State, 852 N.W.2d 372, 376-77 (N.D. 2014) (holding that counsel was not ineffective for failing to raise an issue of first impression in that jurisdiction); and Ross v. State, 16 So. 3d 47, 60 (Miss. Ct. App. 2009) (holding that counsel could not be deemed ineffective for failing to raise a claim that hinged on "clearly unsettled" law).

We likewise hold that a defendant's counsel cannot be deemed ineffective for failing to raise a novel claim that hinges on a legal question of first impression. Although a particularly creative and adept attorney might raise such a claim, the Strickland test "has nothing to do with what the best lawyers would have done" or "even what most good lawyers would have done." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir.

16

2001) (citation omitted). Instead, <u>Strickland</u> requires "only a '"reasonably competent attorney,"'" which is to say that it "does not guarantee perfect representation," <u>Harrington v. Richter</u>, 562 U.S. 86, 110 (2011) (quoting <u>Strickland</u>, 466 U.S. at 687), or even "ideal" representation. <u>Mickens v. Taylor</u>, 240 F.3d 348, 363 (4th Cir. 2001). <u>See also</u> <u>United States v. Valas</u>, 40 F.4th 253, 260 (5th Cir. 2022) ("[T]he Sixth Amendment entitles a criminal defendant to <u>reasonable</u>, but not <u>perfect</u>, representation of counsel." (citation omitted)). To hold that a defendant's counsel renders ineffective assistance by failing to raise a novel claim that hinges on a legal question of first impression would be to require representation that goes beyond that which is reasonable and to require representation that begins to approach perfection.

In this case, the Fourth Amendment claim that McCoy argues his counsel should have raised <u>might</u> ultimately prove to have merit. To be clear, we need not and do not express an opinion on that claim at this time. For our purposes in this case, it is sufficient to note that the threshold legal question upon which that claim hinges has not been answered by any controlling authority. Thus, McCoy's counsel cannot be deemed ineffective for failing to raise that Fourth Amendment claim, and

17

his counsel did raise reasonable arguments in support of suppressing the BAC test results. See United States v. Conner, 456 F. App'x 300, 307 (4th Cir. 2011) (noting, in rejecting an ineffective-assistance-of-counsel claim alleging that counsel had failed to raise a specific argument with respect to a certain issue, that "there were many good [arguments] that [counsel] did make" with respect to that issue). Accordingly, the circuit court did not err by denying McCoy's ineffective-assistance-of-counsel claim. Although the circuit court denied that claim for a different reason, we may affirm that court's ruling if it is correct for any reason. Taylor v. State, 157 So. 3d 131, 146 (Ala. Crim. App. 2010).

## Conclusion

Based upon the foregoing, the judgment of the circuit court is affirmed.

AFFIRMED.

Windom, P.J., and Cole and Minor, JJ., concur. Kellum, J., dissents, with opinion.

CR-20-0821

KELLUM, Judge, dissenting.

The fact that there is no binding precedent on a precise legal issue does not, in my view, preclude a finding that counsel's performance was deficient for not raising a claim involving that legal issue. I agree that counsel "'cannot be deemed ineffective for failing to forecast changes in the law.'" State v. Mitchell, [Ms. CR-18-0739, February 11, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (quoting State v. Tarver, 629 So. 2d 14, 18-19 (Ala. Crim. App. 1993)). A lawyer cannot be faulted for not being clairvoyant. However, I do not believe it necessarily follows that counsel cannot be deemed ineffective for not raising an issue that, upon review of the facts of the case and existing law, would lead a reasonable attorney to believe the issue had merit. See, e.g., Reed v. State, 856 N.E.2d 1189 (Ind. 2006), and State v. Westeen, 591 N.W.2d 203 (Iowa 1999) (both holding that counsel was ineffective for not raising an issue of first impression). A bright-line rule that counsel cannot be ineffective for not raising an issue simply because neither the United States Supreme Court nor an appellate court in the jurisdiction in which counsel is representing his or her client has had the opportunity to address that precise issue is ill-advised, runs counter to the reasonableness standard applicable to

19

claims of ineffective assistance of counsel -- a standard that requires consideration of all the circumstances, and "is not sufficiently protective of a defendant's constitutional and statutory rights to effective counsel." State v. Breitzman, 378 Wis.2d 431, 478, 904 N.W.2d 93, 116 (2017) (Abrahamson, J., concurring).

That being said, because the Court today does not examine the merits of the Fourth Amendment issue underlying Broderick Darnell McCoy's claim of ineffective assistance of counsel in his Rule 32, Ala. R. Crim. P., petition for postconviction relief, I find it unnecessary to write in detail to that issue. Suffice it to say, after carefully reviewing the Rule 32 record and the record from McCoy's direct appeal, I believe that McCoy's Fourth Amendment right to be free from unreasonable searches and seizures was violated and that his counsel was ineffective for not raising that issue in the pretrial motion to suppress. Had counsel done so, the issue would have been preserved for this Court in McCoy's direct appeal,[3] and I believe, or at least hope, that this Court would have

---

[3]McCoy raised the issue on direct appeal, but this Court held in our unpublished memorandum that it had not been properly preserved for review. McCoy v. State (No. CR-18-0559), 322 So. 3d 1074 (Ala. Crim. App. 2020) (table).

reached the conclusion that a person has an objectively reasonable expectation of privacy in a blood sample provided for medical-treatment purposes only and that a police officer cannot commit what is essentially a theft of that person's blood sample from a locked biohazardous-waste container at a hospital when that person expressly limits his consent to providing the sample for medical-treatment purposes and has expressly refused consent to law enforcement to collect a blood sample to test for alcohol content. I believe that United States Supreme Court precedent involving blood-alcohol testing -- including, but not limited to, Schmerber v. California, 384 U.S. 757 (1966), Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989), Ferguson v. City of Charleston, 532 U.S. 67, 78 (2001), Missouri v. McNeely, 569 U.S. 141 (2013), and Birchfield v. North Carolina, 579 U.S. 438 (2016) -- invariably leads to this conclusion, and I also find State v. Copeland, 680 S.W.2d 327 (Mo. Ct. App. 1984), State v. Comeaux, 818 S.W.2d 46 (Tex. Crim. App. 1991), State v. Funk, 177 Ohio.App.3d 814 (2008), 896 N.E.2d 203, and State v. Martinez, 534 S.W.3d 97 (Tex. App. 2018), aff'd, 570 S.W.3d 278 (Tex. Crim. App. 2019), to be highly persuasive on this issue.

Therefore, I respectfully dissent.