[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15967
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00082-CR-T-26TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR JOSUE VASQUEZ-PADILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 22, 2009)

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Hector Josue Vasquez-Padilla appeals his convictions for manufacturing and

possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). Vasquez-Padilla argues first that the district court erred in denying his motion to suppress evidence obtained both as a result of law enforcement officers' warrantless entry into the residence from which the contraband was seized and during a subsequent search of the residence pursuant to a court-authorized search warrant. Vasquez-Padilla asserts additionally that his conviction under 18 U.S.C. § 924(c) should be vacated because the evidence was insufficient to establish the requisite nexus between the firearms and his drug-trafficking crimes. After review of the record and consideration of the parties' briefs, we AFFIRM.

## I. BACKGROUND

The following facts were adduced at the hearing on Vasquez-Padilla's motion to suppress. On 14 January 2008, Sam Bailey, a deputy with the Hillsborough County Sheriff's Office, was dispatched to 17820 Jamestown Way, Apartment D, in Lutz, Florida, to assist Deputy Thomas Chavez in locating a missing juvenile, Karla Rivera, who was on probation. Chavez believed that Rivera was at the apartment with Vasquez-Padilla, whom he knew to be a gang

2

member with a violent history. When Bailey arrived at the scene, Chavez indicated that he and the other officers had seen movement in the blinds, indicating that someone was inside the apartment. Identifying themselves as law enforcement, the officers banged on the door and yelled for Rivera to come out. Although they called for her numerous times, no one answered. Chavez indicated that he had been at the apartment for approximately two hours before Bailey arrived and, during that entire time, had been trying to coax Rivera out of the apartment.

The officers eventually obtained a key to the apartment from the complex manager, which Chavez used to unlock the door. Chavez was only able to open the door about four inches because there was a chain lock on the inside of the door. The officers continued to call through the open door for Rivera to exit the apartment. Approximately ten minutes after Chavez opened the door, Vasquez-Padilla released the interior chain lock and exited the apartment. Bailey observed that Vasquez-Padilla was "very sweaty," even though it was mid-January and the weather was cool, and that there was loose insulation in his hair and on his shoulders. His hands were shaking and he appeared "very nervous." After Vasquez-Padilla told the officers that Rivera was inside, Bailey made the decision to enter the apartment in order to ascertain her physical well-being. As Bailey walked into the apartment and around the corner to the middle of the living room,

3

he observed a couch, on top of which was a speaker box containing marijuana. At this point, Rivera appeared from the back hallway and Chavez took her into custody. Bailey testified that the marijuana was in plain view as he entered the apartment and that as soon as he stepped inside the doorway, he detected a strong odor of marijuana. Bailey did not search the apartment at all while he was there.

After exiting the apartment, Bailey asked Vasquez-Padilla for permission to search the apartment. Vasquez-Padilla told Bailey that he could not give consent because the lease was in his mother's name, he did not live at the apartment, and was "just visiting" to play video games. Vasquez-Padilla's mother later came to the apartment and also refused to consent to a search, stating that she could not consent because she did not live there. She told the officers that her son, Vasquez-Padilla, and daughter lived at the apartment.

Bailey thereafter appeared before a Hillsborough County Circuit Court judge with a search warrant affidavit. Bailey stated in the affidavit that on 14 January 2008: (1) he responded to an apartment to locate a missing juvenile; (2) he entered the apartment to locate the juvenile after Vasquez-Padilla told him she was inside; (3) upon entering the residence he "detected a strong odor of marijuana" and saw "green marijuana within plain view on a speaker that was sitting on a couch"; (4) after the missing juvenile appeared, he asked Vasquez-Padilla for consent to

4

search the residence, which Vasquez-Padilla denied; (5) Vasquez-Padilla previously had been arrested and convicted for possession of marijuana.[1] Based on the foregoing, Bailey stated that he had reason to believe that the residence was "being used to store and distribute marijuana and other illegal substances."

The judge issued a search warrant for 17820 Jamestown Way, Apt. D, in Lutz, Florida, authorizing the officers to search the premises, including "all lands, grounds, and outbuildings or vehicles parked on, in close proximity to, owned, or under the control of the occupants or the aforementioned residence," for "marijuana, proceeds of illegal drug trafficking, telephone numbers or photographs related to illegal drug trafficking, illegal drug paraphernalia used to compound harvest, manufacture, store, package, smuggle, transport, distribute, or use/ingest illegal controlled substances."

Pursuant to the warrant, Bailey searched the entire apartment as well as the attic, the entrance to which was located in the ceiling outside the two bedrooms. Bailey observed on the floor below the attic opening the same kind of loose insulation Vasquez-Padilla had on his shoulders and in his hair when he exited the residence. A search of the attic uncovered numerous firearms, most of which were

---

[1]According to the government's proffer at the stipulated bench trial, Vasquez-Padilla had previously been convicted of felony possession of cocaine and marijuana in the state of Florida.

fully loaded, that had been wrapped in plastic and buried in insulation.[2] The officers also found a large supply of ammunition throughout the apartment. The officers further uncovered a .40 caliber pistol inside a laundry basket in the laundry room, near the grow operation. The gun, which had an extended clip, was fully loaded with twenty-nine to thirty rounds of ammunition when the officers entered the apartment.

In the kitchen, the officers found marijuana and numerous plastic baggies for packaging marijuana on top of the kitchen cabinets, a bong on the kitchen counter top, a water cooler containing loose marijuana, and a black backpack containing several firearms, including a Colt .357 Python pistol and a Loerin .25 caliber pistol, inside the kitchen cabinets. In the sink of the bathroom located off the hallway the officers found loose marijuana and in the bathroom cabinet they found a book on law enforcement tactics. The officers observed loose marijuana drying on a picture frame in one of the bedrooms, and a "grow operation" with growing marijuana plants in the walk-in closet of the other bedroom. They also found a box

---

[2] The weapons seized from the attic included a: (1) Llama .45 caliber pistol; (2) Raven Arms .25 caliber pistol; (3) Colt .45 pistol; (4) .635 caliber automatic pistol; (5) Smith & Wesson .38 caliber revolver; (6) Harrington & Richards .32 caliber revolver; (7) Mossburg .12 gauge shotgun; (8) Romarm AK-47 7.62 caliber assault rifle; (9) Remington .12 gauge shotgun; (10) New England Firearms .410 caliber rifle; (11) Remington Arms 30.06 rifle and scope; (12) Savage .20 caliber rifle; (13) an illegal Winchester .12 gauge short-barreled shotgun; (14) Mossburg .12 gauge shotgun; and (15) Glock .40 caliber revolver. Id. at 19.

containing several large bags of marijuana, scales, numerous books and periodicals on growing marijuana, several bottles of liquid fertilizer used to grow marijuana, and a large set of pots and containers in which to grow marijuana. In total, the officers seized approximately 3.6 pounds of marijuana from the apartment.

In his motion to suppress, Vasquez-Padilla argued that there were no exigent circumstances justifying the officers' warrantless entry into the apartment and that the resultant search of the apartment was unlawful. With respect to the latter, he contended first that the search warrant affidavit, by relying solely on a general smell of marijuana and the presence of an amount of marijuana suitable for personal use only, did not provide the magistrate with a substantial basis for determining whether there was probable cause to believe that he was engaged in a pattern of illegal drug activity. He argued additionally that the search warrant was overly broad because it authorized a search of "all lands, grounds and outbuildings" and encompassed all aspects of a drug trafficking operation even though the affidavit did not specifically allege drug trafficking, describe a pattern of criminal activity, or show probable cause for believing that the entire apartment contained evidence of drug trafficking. Finally, Vasquez-Padilla argued that the officers did not act in good faith in relying on the warrant and that Bailey intentionally omitted material facts from the search warrant affidavit.

7

The district judge denied Vasquez-Padilla's motion to suppress, finding as an initial matter that he lacked standing to challenge the search because he abandoned any claim to privacy by telling the officers that he did not live at the apartment and was just a visitor, and, alternatively, found that exigent circumstances justified the officers' warrantless entry and that the search warrant, though broad, was valid.

Vasquez-Padilla waived his right to a jury trial and, following a stipulated bench trial, was found guilty by the district court on all three counts of the indictment. With respect to Count 2, the court concluded that given the "veritable arsenal [of firearms] . . . in conjunction with a drug trafficking or a marijuana grow house operation," there was "no question that he possessed these firearms in furtherance of" a drug trafficking crime. The district court sentenced Vasquez-Padilla to concurrent terms of sixty and eighty-four months' imprisonment for Counts 1 and 3, respectively, and to a consecutive term of sixty months' imprisonment as to Count 2. This appeal followed.

## II. DISCUSSION

A. <u>Motion to Suppress</u>

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. It well-established, however, that only individuals who

8

have a legitimate expectation of privacy in the area invaded have standing to invoke the protections of the Fourth Amendment. Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979); see also United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) (noting that because "Fourth Amendment rights . . . are personal, . . . only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search"). An individual has a legitimate expectation of privacy protected by the Fourth Amendment if he (1) "exhibit[s] an actual expectation of privacy," and (2) "the privacy expectation [is] one that society is prepared to recognize as reasonable." United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (quotation marks and citation omitted). In order to establish standing to challenge the validity of a government search, the individual must therefore demonstrate both a subjective and an objective expectation of privacy. Id. We review the district court's findings as to the first element, which involves a factual determination, for clear error, and its findings as to the second element, which involves a question of law, de novo. United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987) (per curiam); see also United States v. Hastamorir, 881 F.2d 1551, 1560 (11th Cir. 1989) (noting that whether a defendant has abandoned his privacy interest is a factual issue subject to review for clear error only). In

9

determining whether the defendant has demonstrated a legitimate expectation of privacy in the object of the challenged search, we view the evidence in the light most favorable to the prevailing party below. United States v. Bennett, 555 F.3d 962, 964 (11th Cir. 2009) (per curiam).

We have held that where a defendant explicitly denies having any relationship, other than access, to the premises searched, he cannot carry his burden of establishing the subjective expectation of privacy required to assert standing. United States v. Sweeting, 933 F.2d 962, 964 (11th Cir. 1991) (defendants' temporary access to the premises and fact that they kept some personal effects on premises was, "when coupled with their explicit disclaimer of ownership or interest," insufficient to establish subjective expectation of privacy).

According to Deputy Bailey's sworn testimony at the suppression hearing, Vasquez-Padilla expressly disclaimed any subjective expectation of privacy in the apartment by telling the officers that he did not live there, was just visiting, and could not consent to a search.[3] The district court's finding that Vasquez-Padilla

_____

[3] In his testimony at the suppression hearing, Vasquez-Padilla denied telling the officers that he did not live at the apartment and was just visiting. The district court chose to credit Deputy Bailey's contradictory testimony, however, and nothing in the record suggests that the court's decision to discredit Vasquez-Padilla's testimony was "contrary to the laws of nature." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (holding that this court will accept the trial court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it") (quotation marks and citation omitted).

lacked a subjective expectation of privacy in the apartment was therefore not clearly erroneous. Because we conclude that Vasquez-Padilla failed to establish standing to challenge the officers' initial entry into the apartment and the resultant search, we need not address whether exigent circumstances existed to justify the officers' entry into the apartment or the validity of the search warrant.[4]

B. Possession of a Firearm in Furtherance of a Drug-Trafficking Crime

Although we ordinarily review de novo whether the evidence was sufficient to support a conviction, where, as here, "a defendant does not move the district court for a judgment of acquittal at the close of the evidence, we may reverse the conviction only to prevent a manifest miscarriage of justice." United States v. Bender, 290 F.3d 1279, 1283-84 (11th Cir. 2002) (citation omitted). Under this

---

[4] Although Vasquez-Padilla clearly abandoned any claim to privacy with respect to the officers' initial entry into the apartment, even assuming, arguendo, that he had standing to challenge the resultant search based on his mother's statement to officers that he lived at the apartment, Vasquez-Padilla's assertion that the search warrant was invalid is without merit because: (1) the allegations in Bailey's affidavit that he smelled a strong odor of marijuana and saw marijuana in plain view in an apartment occupied by an individual who previously had been convicted for possession of marijuana provided the magistrate with a substantial basis for determining that "contraband or evidence of a crime" would be found in the apartment, see Illinois v. Gates, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332 (1983); (2) the warrant stated with particularity the items to be seized and the place to be searched, see United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982); and (3) even assuming the warrant was overly broad, the officers acted in good faith in relying on the warrant because it was not "so overly broad on its face that the executing officers could not reasonably have presumed it to be valid." United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000) (good faith exception to exclusionary rule as articulated in United States v. Leon, 468 U.S. 897, 918, 104 S. Ct. 3405, 3418 (1984), may be applied to a search pursuant to an overly broad warrant).

11

standard, we must find that "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id.

To obtain a conviction under 18 U.S.C. § 924(c)(1)(A), the government must prove that the defendant "(1) knowingly (2) possessed a firearm (3) in furtherance of any drug trafficking crime for which he could be prosecuted in a court of the United States." United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008). "The 'in furtherance' element requires proof that the firearm helped, furthered, promoted, or advanced the drug trafficking." Id. (quotation marks and citation omitted). Accordingly, the government must demonstrate some nexus between the firearms and the defendant's drug-trafficking operation – the mere "presence of a firearm within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction." United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002). In determining whether the requisite nexus has been established, we consider several factors, including the type of drug activity being conducted; the type and accessibility of the firearm; whether the weapon is stolen; the status of the possession (legitimate or illegal); whether the firearm is loaded; the proximity of the firearm to the drugs or drug-money; and the circumstances under which the firearm is found. Woodard, 531 F.3d at 1362. Though not exclusive, these factors "distinguish possession in

12

furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." Timmons, 283 F.3d at 1253; see also United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000) (noting that "a drug trafficker who engages in target shooting or in hunting game likely [will not] violate the law by keeping a pistol for that purpose that is otherwise locked and inaccessible").

In this case, the officers found marijuana, paraphernalia, and items used for packaging marijuana in the kitchen in close proximity to a bag containing two pistols and ammunition; a large amount of harvested and growing marijuana in the hall bathroom and in both bedrooms; and a .40 caliber pistol with a fully loaded extended clip holding thirty rounds of ammunition in the nearby laundry room. The officers also uncovered fourteen firearms, including four pistols, two revolvers, an AK-47 assault rifle, three shotguns, three rifles, and an illegal short-barrel shotgun, most of which were fully loaded, from the attic, which was located between the two bedrooms and had been accessed by Vasquez-Padilla shortly before he exited the apartment, as well as numerous books about growing marijuana, fertilizer, pots for growing marijuana plants, and scales, throughout the apartment.

This evidence was clearly sufficient for the district court to have concluded

that Vasquez-Padilla possessed the firearms, which were loaded and in close proximity to the marijuana, in order to defend his drugs and drug-trafficking operation. See Woodard, 531 F.3d at 1362; Timmons, 283 F.3d at 1253. The district court therefore did not err in finding that Vasquez-Padilla possessed the firearms "in furtherance of" drug-trafficking under § 924(c)(2).

## III. CONCLUSION

Vasquez-Padilla appeals his convictions for manufacturing and possessing with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon, arguing that the district court erred in denying his motion to suppress evidence and that the evidence was insufficient to sustain a conviction under 18 U.S.C. § 924(c). Because Vasquez-Padilla lacked standing to challenge either the officers' entry into the apartment or the resultant search, we affirm the district court's denial of his motion to suppress. Further, the evidence that Vasquez-Padilla kept loaded firearms in the kitchen and laundry room, in close proximity to where marijuana was being packaged, stored, and grown, was more than sufficient for the district court to find Vasquez-Padilla guilty of possessing the firearms "in furtherance" of drug-trafficking crimes. Accordingly, the judgment of the district court is **AFFIRMED**.

14