**The STATE of Ohio, Appellee,**

v.

**FUNK, Appellant.**

[Cite as *State v. Funk*, 177 Ohio App.3d 814, 2008-Ohio-4086.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 07CA3005.

Decided Aug. 7, 2008.

Toni L. Eddy, Chillicothe Law Director, and Michele R. Rout, Assistant Chillicothe Law Director, for appellee.

Timothy Young, State Public Defender, and Jessica S. McDonald, Assistant State Public Defender, for appellant.

KLINE, Judge.

{¶ 1} Gregory A. Funk appeals the judgment of the Chillicothe Municipal Court, overruling his motion to suppress the results of a chemical test of his urine, which was taken to determine the alcohol content in his body. On appeal, Funk contends that the trial court erred when it overruled his motion to suppress by finding that the Fourth Amendment is not implicated because Funk abandoned his urine during his hospitalization when hospital staff inserted a catheter into Funk to collect his urine. An employee put the urine from the catheter into a plastic container with the purpose of then flushing the urine down the commode when an officer asked the employee for a sample. Earlier, an officer asked Funk to submit to a blood test, and he had refused. Because we find that competent, credible evidence does not support the trial court's finding of abandonment, and because we find that the Fourth Amendment is implicated, we agree with Funk that the trial court erred. Accordingly, we reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.

I

{¶ 2} Funk drove a car involved in a one-car accident. He went to the hospital to receive treatment for his injuries. Hospital staff inserted a catheter into Funk and attached a Foley bag for the collection of his urine.

{¶ 3} A trooper with the Ohio State Highway Patrol investigated the accident. The trooper went to the hospital and asked Funk to submit to a blood test. Funk refused. The trooper advised Funk of his immediate license suspension.

{¶ 4} The trooper's boss ("sergeant") arrived to assist the trooper. While there, the sergeant noticed a hospital employee take Funk's Foley bag and empty its contents into a plastic container. The employee stated that he was going to take the urine in the plastic container and flush it down the commode. The sergeant asked the employee for a sample. The employee complied and put the sample into a urine-sample kit provided by the trooper.

{¶ 5} The sergeant then packaged the sample and sent it to the Ohio State Patrol Crime Lab. Neither the trooper nor the sergeant had a warrant to seize the urine. The urine analysis showed an alcohol level of .392 grams by weight of alcohol per one hundred milliliters (grams percent) of urine.

{¶ 6} The state charged Funk with operating a vehicle while under the influence of alcohol ("OVI"). Funk entered a not-guilty plea. Funk filed a motion to suppress the results of his urine test based on a violation of the Fourth Amendment to the United States Constitution. The court overruled Funk's motion and implicitly found that the Fourth Amendment was not implicated because Funk had abandoned his urine.

{¶ 7} Funk entered a no-contest plea, and the court found him guilty of the OVI. The court sentenced Funk accordingly.

{¶ 8} Funk appeals and asserts the following assignment of error: "The trial court erred when it held that the collection of [Funk's] urine sample did not violate his right to be free of unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 14 of the Ohio Constitution."

## II

{¶ 9} Funk contends that the trial court erred when it overruled his motion to suppress because it found that the Fourth Amendment was not implicated.

{¶ 10} Our review of a decision on a motion to suppress presents mixed questions of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. Id. We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034; *State v. Fields* (Nov. 29, 1999), Hocking App. No. 99CA11, 1999 WL 1125120.

{¶ 11} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576. Thus, the defendant has the initial burden of showing (1) governmental action and (2) a reasonable expectation of privacy. See *Minnesota v. Carter* (1998), 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373.

{¶ 12} Funk contends that the Fourth Amendment is implicated because law enforcement (governmental action) seized a sample of his urine without his consent from a hospital employee after he refused to consent to a blood test. The crux of his assertion is that he had an actual expectation of privacy and that society objectively recognizes his expectation as justifiably reasonable.

{¶ 13} The United States Supreme Court has held that in a hospital setting, the collection of a blood sample taken by a physician from an accused person in order to determine its alcohol content for the purpose of proving a criminal charge is a search and seizure within the meaning of the Fourth Amendment. *Schmerber v. California* (1966), 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908. Later, the court extended this application to include a urine sample. *Skinner v. Ry. Labor Executives' Assn.* (1989), 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639. The court stated, " 'There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.' " Id., quoting *Natl. Treasury Emps. Union v. Von Raab* (C.A.5, 1987), 816 F.2d 170, 175.

{¶ 14} Here, law enforcement asked the hospital employee for the sample, without Funk's consent, and provided the employee with a urine-sample container. In short, law enforcement seized Funk's urine. Thus, pursuant to *Schmerber* and *Skinner*, we find that Funk met his initial burden of showing (1) governmental action and (2) a reasonable expectation of privacy.

{¶ 15} However, the state argues that Funk's expectation of privacy does not apply here, because the facts of this case show that Funk abandoned his urine. The state claims that the facts support the trial court's finding that the urine was waste, which Funk abandoned. We are not persuaded.

{¶ 16} "The word 'abandon' means '[t]o relinquish or give up with intent of never again resuming one's right or interest. * * * To give up absolutely; to forsake entirely; to renounce * * * utterly; to relinquish all connection with or concern in; to desert.' " *Fulmer v. Insura Prop. & Cas. Co.* (2002), 94 Ohio St.3d 85, 95, 760 N.E.2d 392, quoting Black's Law Dictionary (6th Ed.1990) 2.

{¶ 17} Here, we find that competent, credible evidence does not support the trial court's finding that Funk abandoned his urine (waste) before it went down the commode. He did not do a single thing (act) to even suggest that he was abandoning his urine. In fact, he expressed his desire to maintain his privacy by not consenting to a chemical test for alcohol content. While we agree that a typical person probably abandons his or her urine by flushing it down the toilet, that did not happen here.

{¶ 18} The state implies that Funk abandoned his urine to the hospital when he allowed the hospital to insert a catheter to gather his urine. While we agree that the hospital had his implied consent to dispose of his urine by flushing it down the commode, we do not agree that the hospital had his consent to turn it over to law enforcement so that they could perform a chemical test for alcohol. See *Ferguson v. Charleston* (2001), 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205.

{¶ 19} The state seems to argue that the Fourth Amendment protects property interests, rather than privacy interests. This is not so. *California v. Rooney* (1987), 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (holding that "[t]he primary object of the Fourth Amendment is to protect privacy, not property") (White, J., dissenting).

{¶ 20} Shortly after *Rooney*, the Supreme Court of the United States held that you can abandon privacy interests by placing items in the trash. *California v. Greenwood* (1988), 486 U.S. 35, 41, 108 S.Ct. 1625, 100 L.Ed.2d 30. But unlike the trash left at curbside, Funk's urine was accessible only to those people involved in his medical care. First, his hospital room is not an area "suited for public inspection." Id. The catheterization procedure and the collection of his urine is an activity not every member in the public could engage in. Id. This makes this situation further distinguishable from *Greenwood* because, unlike the trash collector, a medical professional is not entitled to "rummage" around a person's body, medical samples, or record. Id. Under the circumstance of this case, it is not evident that Funk intended to surrender his privacy interests.

{¶ 21} The state cites *Larkins v. Ohio Dept. of Rehab. & Corr.* (2000), 138 Ohio App.3d 733, 742 N.E.2d 219, for the proposition that "there is no Fourth Amendment expectation of privacy which extends to bodily waste such as urine." However, *Larkins* involved a prisoner. As the *Larkins* court pointed out, a prisoner gives up most of his rights to privacy. Unlike the facts in *Larkins*, the setting here is a hospital, not a prison. As such, Funk did not surrender most of his rights to privacy. Persons reasonably expect increased privacy during hospitalization, contrary to the expectation of privacy a prisoner holds during incarceration.

{¶ 22} Therefore, for the above stated reasons, we find that the trial court erred when it overruled Funk's motion to suppress. Unlike the trial court, we find that the Fourth Amendment is implicated.

{¶ 23} Accordingly, we sustain Funk's sole assignment of error and reverse the judgment of the trial court. We remand this cause to the trial court for further proceedings consistent with this opinion. On remand, the trial court will need to undertake a Fourth Amendment analysis. Because a warrant did not issue in this case, the trial court will need to determine whether any of the exceptions to a warrant apply.

Judgment reversed
and cause remanded.

ABELE, P.J., concurs in judgment only with opinion.

McFARLAND, J., concurs in judgment only.

ABELE, Presiding Judge, concurring in judgment only.

{¶ 24} I agree with the principal opinion that the Fourth Amendment is implicated in the situation presented in the case sub judice. On remand, the parties and the trial court should further explore whether some recognized exception to the warrant requirement may apply. See, e.g. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (either a warrant or exigent circumstances must exist, and methods used to extract bodily fluids must be reasonable); *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216; and *State v. Troyer*, Wayne App. No. 02-CA-0022, 2003-Ohio-536, 2003 WL 245846.