[Cite as *State v. Clark*, 2014-Ohio-4873.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,         CASE NO. 5-13-34

    v.

JOHN M. CLARK,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Findlay Municipal Court
Trial Court No. 11-TRC-09384

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: November 3, 2014**

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Alan D. Hackenberg* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant, John Clark ("Clark"), brings this appeal from the judgment of the Findlay Municipal Court in Hancock County, Ohio, finding him guilty of OVI (operation of a vehicle while under the influence of alcohol) in violation of R.C. 4511.19(A)(1)(a), and sentencing him accordingly. On appeal, Clark challenges the trial court's entries denying his motion to suppress and his motion to dismiss for speedy trial violations. For the reasons that follow, we reverse in part and affirm in part the trial court's judgment.

{¶2} The facts relevant to this appeal, as stipulated by the parties, are as follows.

1)    On October 13, 2011, Defendant John Clark was found off of South River Road in Findlay, Ohio underneath his motorcycle having crashed as a result of a deer crossing his path unexpectedly.[1] The Hancock County Sheriff's Office first received a report of this crash at 1:47 A.M.

2)    As a result of the accident, Defendant Clark was transported to the Blanchard Valley Hospital and then later by Life Flight t[o] Mercy St. Vincent's Medical Center in Toledo, Ohio.

3)    On October 13, 2011 at 3:30 AM, St. Vincent's Medical Center drew Defendant Clark's blood, apparently for medical purposes, and tested same, discovering a blood alcohol content of 0.174 %. Defendant was discharged from the medical center the next day.

---

[1] We note that a journal entry from October 3, 2012, states that the parties agreed upon the facts of the case, as presented in Clark's motion, except for the cause of the crash. (R. at 23.) The parties do not challenge the trial court's finding that the crash was "a result of a deer crossing his path unexpectedly"; therefore, for the purpose of this opinion, we presume this finding is correct.

4)   On December 20, 2011, Deputy Thomas Miller of the Hancock County Sheriff's Office sent a request to the St. Vincent's Medical Center pursuant to Ohio Rev. Code 2317.02 and 2317.022 requesting Defendant's Clark [sic] medical records for the date of the accident. Although the form utilized by Deputy Miller was not identical to that contained in R.C. 2317.022, it was substantially similar.

5)   St. Vincent's Medical Center complied with Deputy Miller's request and provided the medical records of the Defendant from the date of the accident. Based in part upon those medical records, Deputy Miller issued a citation to Defendant Clark for the offense of Operating a Motor Vehicle Impaired with a blood alcohol content of .174% in violation of R.C. 4511.19(A)(l)(a)(c).

(R. at 25, J. Entry, June 5, 2013.)

{¶3} Deputy Miller did not obtain a warrant prior to obtaining Clark's medical records from St. Vincent's Medical Center.  Instead, he utilized R.C. 2317.02(B)(2)(a) and R.C. 2317.022.  R.C. 2317.02(B)(2)(a) states, in relevant part:

If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the

United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records.

R.C. 2317.02(B)(2)(a).

{¶4} Revised Code 2317.022, which is referenced in R.C. 2317.02(B)(2)(a), contains the following language detailing how the request for medical records should be made.

If an official criminal investigation has begun regarding a person or if a criminal action or proceeding is commenced against a person, any law enforcement officer who wishes to obtain from any health care provider a copy of any records the provider possesses that pertain to any test or the result of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question shall submit to the health care facility a written statement in the following form:

"WRITTEN STATEMENT REQUESTING THE RELEASE OF RECORDS
To: .................... (insert name of the health care provider in question).
I hereby state that an official criminal investigation has begun regarding, or a criminal action or proceeding has been commenced against .................... (insert the name of the person in question), and that I believe that one or more tests has been administered to that person by this health care provider to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in that person's whole blood, blood serum or plasma, breath, or urine at a time relevant to the criminal offense in question. Therefore, I hereby request that, pursuant to division (B)(2) of section 2317.02 of the

> Revised Code, this health care provider supply me with copies of any records the provider possesses that pertain to any test or the results of any test administered to the person specified above to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in that person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question.["][2]

R.C. 2317.022(B).

{¶5} Subsequently, Clark was charged with OVI, in violation of R.C. 4511.19(A)(1)(a), and failure to maintain control, in violation of R.C. 4511.202. (R. at 1.) On December 27, 2011, Clark appeared in the trial court for arraignment and requested a continuance. (R. at 3.) He was released on his own recognizance and the matter was continued until January 10, 2012, with the delay charged against Clark pursuant to R.C. 2945.72(C). (*Id.*) Prior to the next arraignment, attorney Kenneth J. Rexford entered an appearance on behalf of Clark and filed a Demand for Discovery and Inspection, Motion for a Bill of Particulars, Request for Intention To Use Evidence, Demand for Exculpatory Material, Demand for Preservation of Evidence, Motion Pursuant to Rule 801(D)(2), Motion for Production of 404(B) Information, and a Reciprocal Discovery Notice. (R. at 5.) On January 10, 2012, Clark appeared before the trial court, entered a plea of Not Guilty, and requested a pretrial conference, which was scheduled for January 31, 2012. (R. at 6-8.) The delay was again charged against Clark pursuant to R.C.

---

[2] The segment concludes with various lines for the Officer's contact information.

2945.72(E). On January 31, 2012, at the pretrial conference, Clark "requested additional time to consider the Prosecutor's Recommendation." (R. at 9.) The Pre-trial Report, signed by the prosecutor and Clark's attorney, stated that "time limits pursuant to ORC 2945.71-73 are hereby waived without limitation." (*Id.*)

{¶6} On February 1, 2012, Clark filed his Motion to Suppress and to Declare R.C. § 2317.02 in Part Unconstitutional. (R. at 10.) Clark requested the suppression of "physical and testimonial evidence resulting from an unlawful and warrantless search of Mr. Clark's personal medical records, which violated his rights to privacy." (*Id.*) He further requested that the court declare unconstitutional the part of R.C. 2317.02 that permits such a warrantless search. (*Id.*) There was a handwritten annotation on this filing stating "2/9/12 Set for Hearing Speedy Trial Tolled pursuant to R.C. 2945.72(E)." (*Id.*)

{¶7} The motion to suppress was scheduled to be heard on May 15, 2012, but prior to that hearing, on May 11, 2012, the trial court denied the part of the motion that requested to declare R.C. 2317.02 unconstitutional. (R. at 13.) The denial was based on the trial court's determination that it had no jurisdiction to rule upon the constitutionality of the statute due to Clark's failure to serve a copy of the motion upon the Attorney General, as required by R.C. 2721.12. (*Id.*) The rest of the motion remained scheduled for the May 15, 2012 hearing. On May 14, 2012, Clark filed a motion to reconsider the trial court's judgment entry

dismissing the challenge to the constitutionality of R.C. 2317.02, asserting that service upon the Attorney General was not required under the circumstances of this case.

{¶8} On May 15, 2012, the date scheduled for a hearing on the motion to suppress, the trial court held a conference at which both parties "requested additional time to respond to the issue." (R. at 15.) The suppression hearing was then rescheduled to a later date, which was July 25, 2012. (R. at 16.) On May 22, 2012, Clark filed Supplemental Memorandum Re: Motion to Suppress. (R. at 17.) On July 23, 2012, the State requested a continuance of the hearing date, stating that Clark's attorney was aware of the motion and had no objection, and requesting that the delay not be charged against the State under R.C. 2945.71. (R. at 19.) The hearing was continued, and the time from July 25, 2012, to the next suppression hearing date of October 3, 2012, was not charged against the State. (R. at 20-21.)

{¶9} On October 3, 2012, the parties appeared before the trial court and agreed upon the facts of the case, except for the cause of the crash. (R. at 23.) The parties requested that the trial court rule on Clark's motion to reconsider, which had been filed in May 2012. (*Id.*) The issue of the suppression was then deemed heard and submitted. (*Id.*) Yet, on January 28, 2013, Clark filed his Second Supplemental Memorandum Re: Motion to Suppress. (R. at 24.)

{¶10} Over four months later, on June 5, 2013, the trial court issued a ruling on the motion to suppress, finding R.C. 2317.02 constitutional and denying the motion. (R. at 25.) Clark's case was then scheduled for a pretrial on July 31, 2013. (R. at 26.) On August 1, 2013, Clark advised the trial court that he was going to file a motion to dismiss on speedy trial grounds. (R. at 27.)

{¶11} On August 6, 2013, Clark filed a motion to dismiss for speedy trial violations, stemming from the trial court's delay in ruling on the motion to suppress. (R. at 28.) The trial court denied the motion on September 5, 2013. (R. at 30.) Clark then withdrew his plea of not guilty and pled no contest. He was found guilty of the OVI charge, but the remaining charge, failure to maintain reasonable control, was dismissed. (R. at 35.) Clark now appeals raising three assignments of error for our review.

**I. THE TRIAL COURT ERRED BY DENYING MR. CLARK'S MOTION TO SUPPRESS, IN VIOLATION OF HIS RIGHT TO PRIVACY AND OF THE PRINCIPLE OF SEPARATION OF POWERS.**

**II. THE TRIAL COURT ERRED BY RULING THE R.C. §2317.02 AND §2317.022 ARE CONSTITUTIONAL.**

**III. THE TRIAL COURT VIOLATED MR. CLARK'S RIGHTS UNDER THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION TO A SPEEDY TRIAL.**

{¶12} Before addressing the assignments of error, we note that Clark chose to disregard the rules of appellate procedure, which require him to argue each

assignment of error separately in his brief (*see* App.R. 16(A); App.R. 12(A)(2)), and combined the arguments related to his first two assignments of error under one section of his brief. We discourage this practice as contrary to the rules and disorderly. If Clark felt that one argument supported his contentions, one assignment of error should have been sufficient. He expects the State and this court to pick and choose which of the statements in his discussion support the first assignment of error and which ones support the second assignment of error. Instead of doing so, this court may simply "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). In the interest of justice, we nonetheless elect to consider Clark's arguments at this time.

### First and Second Assignments of Error—
### *Warrantless Search of Clark's Medical Records Pursuant to*
### *R.C. 2317.02(B)(2)(a) and 2317.022*

{¶13} Clark challenges the use of R.C. 2317.02(B)(2)(a) and 2317.022 to obtain his medical records as unconstitutional. He claims that the statutory scheme allows the government to access an individual's private medical records without a warrant, probable cause, or even a reasonable and articulable suspicion and without any "procedural safeguards," where no exigent circumstances exist to justify such actions. (App't Br. at 4, 6, 10.) He further contends that the statute "has absolutely no substantial procedural safeguards to ensure against abuse by the

government agents taking advantage of that statute," does not prohibit dissemination of the medical records, and does not provide for a notification to the citizen that the intrusion occurred. (*Id.* at 10-11.)

{¶14} Although Clark discusses multiple legal concepts in his brief, mixing them together, he cites two United States Supreme Court cases, *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), which focus on the right to privacy and the Fourth Amendment protection against unreasonable search and seizure, and which seem to be relevant to the constitutional challenges brought herein. We discuss these two cases and address the legal concepts that stem from them in detail. The other concepts that are mentioned, but not briefed by Clark, are not addressed in this opinion because of Clark's failure to support his other contentions with "reasons," "citations to the authorities," and "statutes," as required by App.R. 16(A)(7).

### A. Whalen v. Roe

{¶15} Among his other arguments, Clark cites *Whalen* for the proposition that the government must "establish administrative procedures—procedural safeguards—to protect [the privacy right] whenever government legitimately has a need for medical records." (App't Br. at 6; *accord id.* at 9-12, 18.) As explained by the Ohio Supreme Court, the concerns addressed in *Whalen* "related to the

disclosure of information to the *general public*." (Emphasis sic.) *Stone v. City of Stow*, 64 Ohio St.3d 156, 160-161, 162, 593 N.E.2d 294 (1992) (explaining and following *Whalen*). Both the United States Supreme Court and the Ohio Supreme Court held that a mere "threat of unauthorized disclosure" is not sufficient to declare a statute unconstitutional. *Id.* at 162-163, citing *Whalen* 429 U.S. 589. The threat of unauthorized disclosure must be "significant" and inevitable in order "to cause [a statute] to be declared unconstitutional." *Id.*; *see also Whalen*, 429 U.S. at 600, 603-604 (holding that the challenged government program did not, "on its face, pose a *sufficiently grievous threat*" to amount to a constitutional violation) (emphasis added). Therefore, *Whalen* does not prohibit disclosure of medical records per se, but merely limits disclosure of the information to the general public to ensure no "significant" threat of unauthorized disclosure to the public.

{¶16} Clark seems to argue that the statutory provisions at issue in this case infringe upon his interest in avoiding disclosure of personal matters. (App't Br. at 4, 11.) But he fails to establish a *significant and inevitable* threat of unauthorized disclosure of protected personal information *to the general public*. The statutes restrict the individuals who can make a request for medical records to "law enforcement officers," alleviating Clark's concern that his protected personal information will be disclosed by the hospital directly to the general public. R.C.

2317.02(B)(2)(a). As discussed above, the concern addressed by procedural safeguards in *Whalen* was the disclosure of the patients' information *to the general public* and not disclosure to the law enforcement officers in a criminal investigation.[3]

**{¶17}** Relying on the United States Supreme Court and the Ohio Supreme Court's holdings that a mere threat of disclosure to the general public does not make a statute unconstitutional, but that the threat must be significant and inevitable, we do not find that Clark has satisfied his burden of proving that this statutory scheme is unconstitutional under *Whalen*.

## B. *Ferguson v. City of Charleston*

**{¶18}** Relying on *Ferguson*, Clark asserts that the statutory scheme at issue, which allows the police officer to request and review Clark's medical records without a warrant, violates his Fourth Amendment interest in privacy, i.e., the protection against unreasonable searches and seizures.

> The Fourth Amendment protects persons from "unreasonable searches and seizures" by the government. Section 14, Article I of the Ohio Constitution is interpreted to provide the same protections as the Fourth Amendment. Evidence seized in violation of the Fourth Amendment will be suppressed pursuant to the exclusionary rule. However, the defendant must have a reasonable expectation of

---

[3] The parties in *Whalen* did not request suppression of the evidence. There were no "suspects," because that case did not involve prosecution of the patients who used Schedule II drugs, and the records were disclosed to the state health department rather than to the prosecution. Moreover, in light of our further discussion and holding that R.C. 2317.02 and R.C. 2317.022 do not authorize a warrantless disclosure of medical records to the law enforcement officers, there is no direct threat that the medical information will become public.

> privacy in the evidence seized for standing to challenge the search or seizure.

*City of Marion v. Brewer*, 3d Dist. Marion No. 9-08-12, 2008-Ohio-5401, ¶ 7, citing *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 8, *and State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997). Clark cites *Ferguson* in support of the federally recognized reasonable expectation of privacy in medical records.[4]

{¶19} *Ferguson* is relevant to the issue before us in that it concerned the criminal prosecution of patients whose medical records were obtained by law enforcement without a warrant. In *Ferguson*, a state hospital performed drug screens on maternity patients who were suspected of using cocaine. *Ferguson*, 532 U.S. at 71-72. That policy was implemented in conjunction with the police and local officials, and relied on a "threat of law enforcement intervention that 'provided the necessary "leverage" to make the policy effective.' " *Id.* The United States Supreme Court, reviewing the hospital's action under the Fourth Amendment challenge, held that

> [t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those

---

[4] Although Clark attempts to use *Whalen* in support of his argument that the statutory scheme at issue violates the Fourth Amendment's protection against unreasonable search and seizure, it is important to note that the *Whalen* decision did not concern a Fourth Amendment right. Rather, the patients and physicians in *Whalen* were concerned with the possibility of public disclosure of their medical records and the stigma that would attach from it. There was no discussion of arrest or prosecution that would trigger the Fourth Amendment challenge, and the *Whalen* court expressly declined to resolve that case within the scope of the Fourth Amendment's interest in privacy. *Whalen*, 429 U.S. at 604, fn. 32.

tests will not be shared with nonmedical personnel without her consent.

*Id.* at 78.

**{¶20}** The highest court noted that the policy implemented by the state hospital, which was a state actor, allowed for a search without a warrant, or even probable cause or any reasonable suspicion. *Id.* at 76-77. The Supreme Court disagreed with the "majority of the appellate panel[, which] held that the searches were reasonable as a matter of law under [a] line of cases recognizing that 'special needs' may, in certain exceptional circumstances, justify a search policy designed to serve non-law-enforcement ends." *Id.* at 74. Finding that no special needs that were unrelated to law enforcement were advanced by the hospital's policy, the *Ferguson* court invalidated the policy as unconstitutional, notwithstanding the fact that the hospital's "motive was benign rather than punitive." *Id.* at 79, 85.

**{¶21}** Clark points to *Ferguson*'s recognition of "an individual's federally protected expectation of privacy in his medical records" and urges us to invalidate the Ohio statutory scheme that seemingly allows search and seizure of an individual's medical records without a warrant, in contravention of this expectation of privacy. (App't Br. at 11.)

**{¶22}** Clark recognizes that "the constitutional proscriptions of the Fourth Amendment and the exclusionary rule apply only to government action and not to

the actions of private persons." *State v. Meyers*, 146 Ohio App.3d 563, 575, 767 N.E.2d 739 (3d Dist.2001). Therefore, he does not challenge the *hospital's* action of drawing his blood and performing the medical tests. As such, *Meyers*, where we reviewed the issue of "whether the conduct of the hospital constituted state action" and held that "the hospital's blood test did not constitute state action necessary to implicate Fourth Amendment protections," does not apply to our analysis herein. *See id.* at 575-578.

**{¶23}** Similarly, the *Ferguson* dicta about the hospital's ability to draw blood from its patient and *independently* report it to the law enforcement "under rules of law or ethics"[5] does not apply here. *See Ferguson*, 532 U.S. at 80-81 (distinguishing the case "from circumstances in which physicians or psychologists, in the course of ordinary medical procedures aimed at helping the patient herself, come across information that under rules of law or ethics is subject to reporting requirements, which no one has challenged here").

---

[5] The United States Supreme Court recognized,

> There are some circumstances in which state hospital employees, like other citizens, may have a duty to provide law enforcement officials with evidence of criminal conduct acquired in the course of routine treatment, see, *e.g.,* S.C.Code Ann. § 20–7–510 (2000) (physicians and nurses required to report to child welfare agency or law enforcement authority "when in the person's professional capacity the person" receives information that a child has been abused or neglected).

*Ferguson*, 532 U.S. at 78, fn. 13. "We do not address a case in which doctors independently complied with reporting requirements." *Id* at 85, fn. 24.

{¶24} Here, at issue is not the *hospital's* action of testing Clark's blood or of *independently* forwarding his medical records to the police "under rules of law or ethics." *See id.* Rather, the focus is on the action of the police—a state actor, searching and seizing Clark's medical records without a warrant. (*See* App't Br. at 16, 19.) This distinction is very important because the Supreme Court recognized that the existence of laws requiring the hospital to independently report evidence of criminal conduct to law enforcement, "*might* lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented," thus *possibly* lowering the patient's expectation of privacy. (Emphasis added.) *Ferguson*, 532 U.S. at 78, fn. 13. Yet, the Supreme Court has not held that a patient would have a lowered expectation of privacy and subject himself or herself to a warrantless search *by the police* in absence of such laws.

{¶25} Therefore, this case is about the power of the police to perform a warrantless search of a patient's medical records; in particular, the results of medical tests that have been previously properly performed by the hospital and that show a concentration of alcohol or drugs of abuse at the time of a suspected criminal offense.

### C. OVI Suspect's Expectation of Privacy in Medical Records

**{¶26}** Although the United States Supreme Court in *Ferguson* held that a citizen has a *reasonable* expectation of privacy in medical records, some state courts have since held that the society does not recognize a suspect's expectation of privacy in medical records as reasonable in situations involving an investigation for operating a vehicle under the influence of alcohol or drugs of abuse. For example, the New Hampshire Supreme Court, reviewing the constitutionality of a New Hampshire statute that was similar to the Ohio statutory scheme at issue, held,

> To the extent that the defendant may have a reasonable expectation of privacy in his medical records generally * * *, we conclude that society does not recognize a reasonable expectation of privacy in blood alcohol test results obtained and recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law enforcement purposes in connection with an incident giving rise to an investigation for driving while under the influence of intoxicating liquors or controlled drugs. *See* RSA 329:26.

*State v. Davis*, 161 N.H. 292, 298, 12 A.3d 1271 (2010).

**{¶27}** The New Hampshire Court arrived at this conclusion after reviewing decisions of courts in other jurisdictions:

> Courts in other jurisdictions addressing whether a reasonable expectation of privacy exists in blood test results in the DWI context have reached different conclusions. Several courts have found that society does not recognize a reasonable expectation of privacy under the Fourth Amendment in "blood alcohol test results obtained and

- 17 -

recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law enforcement purposes only in the investigation of an automobile accident." *Hannoy v. State,* 789 N.E.2d 977, 991 (Ind.Ct.App.2003); *see also Tims v. State,* 711 So.2d 1118, 1122–24 (Ala.Crim.App.1997); *People v. Perlos,* 436 Mich. 305, 462 N.W.2d 310, 319–21 (1990); *State v. Guido,* 698 A.2d 729, 733–34 (R.I.1997); *State v. Hardy,* 963 S.W.2d 516, 523–27 (Tex.Crim.App.1997); *State v. Jenkins,* 80 Wis.2d 426, 259 N.W.2d 109, 113 (1977). Others have held that the government's acquisition of medical records under circumstances similar to those in this case violates the defendant's rights under state constitutional provisions prohibiting unreasonable searches and seizures, *see, e.g., Com. v. Shaw,* 564 Pa. 617, 770 A.2d 295, 299 (2001), or state constitutional provisions that guarantee a right to privacy, *see, e.g., King v. State,* 272 Ga. 788, 535 S.E.2d 492, 494–97 (2000); *State v. Nelson,* 283 Mont. 231, 941 P.2d 441, 446–50 (1997).

While the decisions of courts in other jurisdictions are not binding upon us, we find persuasive the reasoning of those cases that focused upon the unique circumstances presented when the government requests and acquires the results of blood tests administered for the purpose of diagnosis and treatment of injuries sustained in an automobile accident. *See Tims,* 711 So.2d at 1122–24; *Hannoy,* 789 N.E.2d at 990–92; *Perlos,* 462 N.W.2d at 315–21; *Hardy,* 963 S.W.2d at 523–27. We also agree that, "although not determinative, one source in analyzing the reasonableness of an expectation is to look to the Legislature," *Perlos,* 462 N.W.2d at 319, and that whether a privilege exists may be some evidence of societal expectations, *Hardy,* 963 S.W.2d at 524.

* * *

By its plain language, the statute now exempts from the physician-patient privilege blood alcohol test results of a person being investigated for driving under the influence of intoxicating liquor or controlled drugs where the blood alcohol tests were administered for the purpose of diagnosis and treatment. *See State v. Nickerson,* 147 N.H. 12, 13, 780 A.2d 1257 (2001).

> By carving out an exception to the physician-patient privilege under this narrow set of circumstances, the legislature has reflected the societal "belief that when people drive, they encounter a diminished expectation of privacy." *Perlos,* 462 N.W.2d at 320. The existence of the Implied Consent law further supports this conclusion.
>
> * * *
>
> Indeed, if a person refuses the request of a law enforcement officer to submit to physical tests or to a test of blood, urine or breath, the person's license to drive will be suspended. *See* RSA 265–A:14 (Supp.2010).

*Id.* at 296-298.

{¶28} We disagree with the line of reasoning adopted by the Supreme Court of New Hampshire in *Davis*, which would require us to strip from an OVI suspect the reasonable expectation of privacy in medical records, as recognized in *Ferguson*. First, we note that many of the cases on which the New Hampshire Court relied were decided prior to *Ferguson*. The New Hampshire Court in *Davis* distinguished *Ferguson* "because the testing [in *Ferguson*] was done for, and in conjunction with, law enforcement," while "there was no law enforcement involvement in the taking or testing of the defendant's blood sample in this case." *Id.* at 298-299. Nevertheless, as we explained above, it is not "the taking or testing of the defendant's blood sample" that we are reviewing in cases concerning the search of a patient's medical records by the law enforcement. Therefore, the distinction noted in *Davis* is not relevant to the case at hand.

**{¶29}** Second, the New Hampshire Supreme Court's reliance on an exception to the physician-patient privilege to find a lack of reasonable expectation of privacy is misplaced because this testimonial privilege applies to testimony at trial and does not apply to search warrants. *See State v. Fairfield*, 8th Dist. Cuyahoga No. 97466, 2012-Ohio-5060, ¶ 16, *appeal not accepted*, 134 Ohio St.3d 1486, 2013-Ohio-902, 984 N.E.2d 30 (holding that a prohibition against "testifying" applied "to trials and not search warrants because warrants are used to aid in the investigation process and are ancillary to the criminal proceedings"). "Proceedings for a search warrant differ from a trial in that the rules of evidence do not apply." *State v. Jaschik*, 85 Ohio App.3d 589, 598, 620 N.E.2d 883 (11th Dist.1993). Therefore, the fact that the statutory scheme at issue waives the physician-patient privilege for the purpose of testifying *at trial* cannot be used to circumvent the Fourth Amendment protections against unreasonable searches and seizures.

**{¶30}** Furthermore, it cannot be argued that the existence of a physician-patient privilege waiver, "*might* lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented," thus lowering the patient's expectation of privacy. (Emphasis added.) *See Hannoy v. State*, 789 N.E.2d 977, 991 (Ind.App.2003), quoting *Ferguson*, 532 U.S. at 78, fn. 13. As explained above,

the dicta in *Ferguson* referred to the requirement of *independently* reporting evidence of criminal conduct to law enforcement "under rules of law or ethics." *Ferguson*, 532 U.S. at 80-81. The statutory scheme at issue does not mandate *independent* reporting of *evidence of the crime*. Rather, it mandates responding to a law enforcement request to provide any evidence "of any test administered" to the suspect, regardless of whether it shows criminal conduct or not. *See* R.C. 2317.02(B)(2)(a). Here, at issue is not the independent reporting requirement but rather, the police action of searching and seizing a patient's medical records.

{¶31} Third, the use by the New Hampshire Supreme Court of the implied consent statute to support obtaining medical records without a warrant overlooks several important distinctions between the implied consent statute and the situations covered by *Davis* and by the Ohio statutory scheme at issue. The implied consent statute operates only *after* the driver has been arrested for OVI. *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 14, 23-24; R.C. 4511.191(A)(2). Conversely, the method adopted by New Hampshire and advanced by the State in this case would allow for a warrantless search of the medical records without the requirement that the person is first arrested. As such, unlike in the implied consent cases, these situations would not even require probable cause prior to performing the search. *See id.* at ¶ 19, 23-24. Such a low threshold for a warrantless search goes beyond the recognized exceptions to the

warrant requirement.[6] Furthermore, the warrantless search of a driver's body for evidence of intoxication in situations where the driver is arrested for OVI has been justified by an exigency, which is a risk of losing evidence because of the diminishing alcohol concentration level in the driver's blood. *See id.* at ¶ 19, citing *Schmerber v. California*, 384 U.S. 757, 770-771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).[7] No such exigency exists in circumstances where, as here, the tests have already been performed and their results are safely stored by the hospital. Finally, the implied consent statutes provide the driver with an opportunity to limit or withdraw the consent, thus avoiding the warrantless search, although the refusal to consent results in certain consequences. *Id.*, at ¶ 20; *State v. Brown*, 158 Ohio App.3d 21, 2004-Ohio-3364, 813 N.E.2d 956, ¶ 13 (7th Dist.). Conversely, the statutory scheme at issue here does not provide for any possibility for the defendant to prevent the disclosure of his medical records to the law enforcement officials. In fact, it does not even include any notification to the defendant that his or her medical records are being searched. Thus, the situations addressed by the New Hampshire Supreme Court in *Davis*, as well as the situations covered by R.C. 2317.02(B)(2)(a) and 2317.022, are entirely distinct from the situations involving

---

[6] See list of recognized exceptions to the warrant requirement in part D. below.
[7] *But see Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (limiting *Schmerber* and mandating a case-by-case approach to the OVI cases to determine whether sufficient exigency exists to allow a warrantless search).

implied consent to a *test* for alcohol concentration level of an impaired driver *arrested* for OVI.

{**¶32**} In addition, we note that even under the reasoning of the New Hampshire Supreme Court in *Davis*, the Ohio statutory scheme could not function to authorize warrantless searches of a driver's medical records because of an important distinction between the Ohio statutory scheme and the statute upheld in *Davis*. The New Hampshire law permitted law enforcement to obtain medical records without a warrant only in connection with "the incident giving rise to the investigation for driving a motor vehicle while such person was under the influence of intoxicating liquors or controlled drugs." *Davis,* 161 N.H. at 297. The Ohio statutes would allow obtaining test results whenever there is any "criminal investigation," not limited to only OVI investigations. R.C. 2317.02(B)(2)(a); R.C. 2317.022(B). In an Indiana case on which the *Davis* court relied, the Indiana court excluded "fishing expeditions" related to "any criminal investigation" from the scope of its statute. *Hannoy*, 789 N.E.2d at 992. The Indiana court held:

> We do not want to be misunderstood as holding that Indiana Code Section 9–30–6–6(a) authorizes the release of toxicological test results or bodily fluid samples to law enforcement *anytime it is requested in relation to any criminal investigation. We do not believe Section 9–30–6–6 authorizes broad "fishing expeditions"* by law enforcement searching for evidence that some person has committed some crime. First, the placement of Section 9–30–6–6 in

the Traffic Code clearly indicates that it applies only to criminal investigations concerning operating while intoxicated and its related crimes. Second, Hannoy was one of two drivers involved in a fatal motor vehicle accident, and we assume that law enforcement officers will limit their requests for toxicological test results specifically to drivers who have been hospitalized following an accident rather than requesting test results from patients at random for no reason whatsoever. This makes the request reasonable under the Fourth Amendment.

(Emphasis added.) *Id.*

{¶33} Unlike the statute in *Hannoy*, R.C. 2317.02(B)(2)(a) and R.C. 2317.022 are not included in Chapter 4511—"Traffic laws," in contrast to the implied consent statute, R.C. 4511.191, which appears immediately after R.C. 4511.19—"Driving while under the influence of alcohol or drugs; tests; presumptions; penalties; immunity for those withdrawing blood." These sections are contained within the Revised Code sections for competency of witnesses, and Section R.C. 2317.02 is entitled "Privileged communications and acts." As already discussed above, the physician-patient privilege does not apply to the search proceedings, and the fact that the statutory scheme at issue waives the physician-patient privilege for the purpose of testifying *at trial*, cannot be used to circumvent the Fourth Amendment protections against unreasonable searches and seizures.

{¶34} Neither the Ohio Supreme Court nor the United States Supreme Court have thus far held that an OVI suspect does not enjoy a reasonable

expectation of privacy in his or her medical records that show an alcohol or drug concentration level in the suspect's blood or urine. But the Ohio Fourth District Court of Appeals has recognized that an OVI suspect had a reasonable expectation of privacy in a urine sample obtained by a hospital as part of its routine treatment and later requested by a law enforcement officer. *State v. Funk*, 177 Ohio App.3d 814, 2008-Ohio-4086, 896 N.E.2d 203, ¶ 13 (4th Dist.).

**{¶35}** The recent decision of the United States Supreme Court in *Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), supports a holding that an OVI suspect's expectation of privacy should not be diminished easily. In *McNeely*, the United States Supreme Court limited situations in which a police officer can request a blood test of an OVI suspect without a warrant to only those individual instances in which obtaining a warrant would be "impractical." *Id.* at 1561. The Supreme Court mandated a case-by-case approach, rejecting the state's contention "that exigent circumstances necessarily exist when an officer has probable cause to believe a person has been driving under the influence of alcohol because BAC evidence is inherently evanescent." *Id.* at 1554, 1561.

> In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so. See *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948) ("We cannot ... excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional

mandate that the exigencies of the situation made [the search] imperative").

*Id.* at 1561.

{¶36} Although the *McNeely* decision focused on the exception to the warrant requirement rather than on the expectation of privacy, we find it relevant to the case at issue that the Supreme Court refused to allow warrantless searches even though "the privacy interest implicated by blood draws of drunk-driving suspects is relatively minimal" and the "governmental interest in combating drunk driving" compelling. *Id.* at 1564-1565. In spite of the recognized importance of preventing "drunk driving," the Supreme Court declined to depart from the warrant requirement absent exigent circumstances:

> "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). Certainly we do not. While some progress has been made, drunk driving continues to exact a terrible toll on our society. See NHTSA, Traffic Safety Facts, 2011 Data 1 (No. 811700, Dec. 2012) (reporting that 9,878 people were killed in alcohol-impaired driving crashes in 2011, an average of one fatality every 53 minutes).
>
> But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case.

*Id.* at 1565-1566. The Supreme Court added that "the Fourth Amendment will not tolerate adoption of an overly broad categorical approach that would dilute the

warrant requirement in a context where significant privacy interests are at stake."
*Id.* at 1564.

{¶37} This holding is very instructive in the case at issue. It directs us to prevent the dilution of the warrant requirement in cases where a patient's federally recognized privacy interest in his or her medical records is at stake and no reasons exist to diminish that privacy interest. While we recognize the threat that impaired drivers pose on Ohio roads and the important interest of preventing impaired driving, we must also acknowledge that "the requirements of the Fourth Amendment cannot be lowered based upon the heinousness of the particular crime police are investigating." *Hannoy*, 789 N.E.2d at 988. Here, the State failed to point to any reason that would justify diminishing a patient's privacy interest, so firmly protected by the United States Supreme Court, in securely-stored medical records.

{¶38} We are mindful of Ohio cases that have previously addressed obtaining medical records pursuant to R.C. 2317.02(B)(2)(a) and R.C. 2317.022, and found no constitutional violations. For example, in *State v. Tomkalski*, 11th Dist. Lake No. 2003-L-097, 2004-Ohio-5624, the defendant alleged that his "constitutional right of privacy" was violated. *Id.* at ¶ 27. The Eleventh District Court of Appeals rejected the defendant's challenge, without discussing *Ferguson* or the expectation of privacy. The court only noted that the medical records in

Ohio were not protected by the constitutional right of privacy, but by the physician-patient privilege, which did not apply " '[i]n any criminal action concerning * * * the results of any test that determines the presence or concentration of alcohol * * * in the patient's blood.' " *Id.* at ¶ 26-27, quoting R.C. 2317.02(B)(1)(c). In so far as the physician-patient privilege protects the medical records from *unauthorized disclosure*, the issues relevant here do not concern the *Whalen* right to privacy, which protects the medical records from unauthorized disclosure, as we noted in our discussion in section A. above. Instead, we are focusing on the *Ferguson*-recognized expectation of privacy in medical records as it relates to the warrantless search and seizure, and criminal prosecution that stems from it. The Eleventh District Court of Appeals did not address this issue.

{¶39} In *City of Cleveland v. Rollins*, 8th Dist. Cuyahoga No. 79614, 2002 WL 490040 (Mar. 14, 2002), the defendant raised the issue of expectation of privacy in medical records. The Eighth District Court of Appeals recognized that R.C. 2317.02(B)(2)(a) serves "merely" to "protect the health care provider from potential civil liability arising out of the release of arguably privileged information," rather than to control admissibility of evidence. *Id.* at *2. Yet, in spite of this recognition of the statute's limited purpose, the Eighth District Court of Appeals did not address the defendant's concerns regarding a violation of his expectation of privacy in his medical records. Instead, the court implied that R.C.

2317.02(B)(2)(a) waives the "due process protections" of criminal defendants "who are suspected of drunk driving or other criminal activity." *Id.* The court thus held that a constitutional violation did not occur where the defendant's medical records were obtained pursuant to the statute because "any physician-patient privilege had already been waived per the terms of R.C. 2317.02(B)(1)(c)," and "the health care provider in question may have chosen to relinquish the test results without first receiving a written statement from the investigating officer." *Id.* Relying on the physician-patient privilege, the Eighth District Court of Appeals ignored the defendant's concerns over his expectation of privacy in medical records. The *Ferguson* opinion was not mentioned either.

{¶40} We find it necessary to re-emphasize the difference between physician-patient privilege, which applies to admissibility of (properly obtained) evidence at trial, and the Fourth Amendment protection against the government's unauthorized invasion into the patient's medical records, which applies to the government's ability to obtain the evidence. *See State v. Fairfield*, 8th Dist. Cuyahoga No. 97466, 2012-Ohio-5060, ¶ 16, *appeal not accepted*, 134 Ohio St.3d 1486, 2013-Ohio-902, 984 N.E.2d 30; *State v. Jaschik*, 85 Ohio App.3d 589, 598, 620 N.E.2d 883 (11th Dist.1993). While R.C. 2317.02(B)(2)(a) and R.C. 2317.022 waive the physician-patient privilege, they do not strip an OVI defendant of his or her expectation of privacy in his medical records.

**{¶41}** The Ohio Supreme Court noted that "R.C. 2317.02(B)(2) *simply waives patient-physician privilege when law enforcement seeks to obtain certain test results.*" (Emphasis added.) *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 55. We have recognized in *Meyers*, 146 Ohio App.3d 563 at 575, 767 N.E.2d 739, that "R.C. 2317.02(B)(2)(a) excluded related records from the privilege." "The clear intent of the legislature was to abrogate the physician-patient privilege and provide the state access to blood-alcohol tests in criminal cases," " 'except to the extent specifically prohibited by any law of this state or of the United States.' " *Id.* at 577, quoting R.C. 2317.02(B)(2)(a). We went even further to call R.C. 2317.02(B)(2)(a) a "mere[] * * * discovery tool through which the state may request and receive the medical records described herein." *Id.* at 578. We did not, however, exclude R.C. 2317.02(B)(2)(a) from the scope of the Fourth Amendment and we did not hold that an OVI suspect does not have a reasonable expectation of privacy in medical records. Rather, in response to the defendant's arguments that the hospital was a state actor (*id.* at 576), we reviewed the case under the search and seizure principles, holding that "the hospital's blood test did not constitute state action necessary to implicate Fourth Amendment protections." *Id.* at 575-578. Other Ohio courts similarly recognize the statute's purpose as a waiver of a physician-patient privilege. *See, e.g.*, *Rollins*, 2002 WL 490040, at *2.

**{¶42}** Therefore, we hold that an OVI suspect in Ohio enjoys a reasonable expectation of privacy in his or her medical records "that pertain to any test or the result of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question," which are stored securely in a hospital. R.C. 2317.022(B). It follows that, prior to obtaining such medical records a law enforcement officer must comply with the warrant requirement of the Fourth Amendment.

*D. The State's Practice of Obtaining Medical Records*
*Pursuant to R.C. 2317.02(B)(2)(a) and R.C. 2317.022*

**{¶43}** Here, the law enforcement officer did not obtain a warrant prior to searching and seizing Clark's medical records. Warrantless searches are per se unreasonable unless one of the enumerated exceptions to the warrant requirement applies. *McNeely*, 133 S.Ct. at 1558; *State v. Kessler*, 53 Ohio St.2d 204, 207, 373 N.E.2d 1252 (1978). The burden is on the state to establish that a warrantless search is valid under one of those exceptions. *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

**{¶44}** The Ohio Supreme Court has explicitly recognized the following seven exceptions to the requirement that a warrant be obtained prior to a search:

(a)   a search incident to a lawful arrest;

(b) consent signifying waiver of constitutional rights;

(c) the stop-and-frisk doctrine;

(d) hot pursuit;

(e) probable cause to search, and the presence of exigent circumstances;

(f) the plain view doctrine; and

(g) administrative search.

*Stone v. City of Stow*, 64 Ohio St.3d 156, 165, 593 N.E.2d 294 (1992). The parties do not argue that any of these enumerated exceptions applied in this case. Therefore, we will not attempt to determine at this point whether Clark's particular situation would fit within one of those exceptions. Focusing on the statutory scheme at issue, we recognize that the seven exceptions above do not include a police officer requesting and searching records of medical tests, previously properly performed by the hospital, where no arrest, consent, hot pursuit, or probable cause and exigent circumstances exist.

{¶45} This conclusion does not, however, mean that the statutory scheme at issue is unconstitutional. We merely hold that R.C. 2317.02(B)(2)(a) and R.C. 2317.022 do not authorize a warrantless search and seizure of the patient's medical records where no recognized warrant exception exists. Accordingly, the use of R.C. 2317.02(B)(2)(a) and R.C. 2317.022 without a warrant to obtain Clark's medical records violated his constitutional protection against unreasonable

search and seizure. This conclusion means that on the basis presented to us, Clark's motion to suppress was not properly denied[8] by the trial court and that Clark's first assignment of error is sustained.

{¶46} But because statutes enjoy a strong presumption of constitutionality and Clark failed to sustain his burden of establishing beyond a reasonable doubt that R.C. 2317.02 and R.C. 2317.022 are unconstitutional, we overrule the second assignment of error. *See Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, at ¶ 8.

*Third Assignment of Error—Speedy Trial*

{¶47} Clark contends that his suppression motion was pending for four times the time that is expected under Sup.R. 40(A)(3),[9] making the delay unreasonable and entitling him to dismissal for a violation of his right to a speedy trial. *See State v. O'Brien*, 34 Ohio St.3d 7, 8, 516 N.E.2d 218 (1987), quoting *State v. Ladd*, 56 Ohio St.2d 197, 199, 383 N.E.2d 579, 581 (1978) ("The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. This same right is assured an accused party by Section 10, Article 1 of the Ohio Constitution."). Clark urges us to apply a balancing test established by the United States Supreme

---

[8] We do not determine whether the exclusion of evidence is necessary herein, or if a good faith exception applies in this case.

[9] Sup.R. 40(A)(3) states that "[a]ll motions shall be ruled upon within one hundred twenty days from the date the motion was filed, except as otherwise noted on the report forms."

Court and adopted by the Ohio Supreme Court to determine whether the right to a

speedy trial has been violated:

> The [United States Supreme Court] identified four factors which courts should assess in determining whether the right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Although the court stated that no one factor is controlling, it noted that the length of the delay is a particularly important factor:
>
> "The length of delay is to some extent a triggering mechanism. Until there is some delay which is *presumptively prejudicial,* there is no necessity for inquiry into the other factors that go into the balance."

*State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997), quoting *Barker*

*v. Wingo*, 407 U.S. 514, 530-531, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**{¶48}** We need not apply the balancing test, however, because "the accused

may waive his constitutional right to a speedy trial, provided such waiver is

knowingly and voluntarily made." *O'Brien*, 34 Ohio St.3d at 9.

> Following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time.

*Id.* at paragraph two of the syllabus.

{¶49} As the trial court found, "defense counsel signed a waiver of speedy time limits without limitation,"[10] and "at no time has the defendant filed 'a formal written objection to any further continuances and a demand for trial.' "  (R. at 30, quoting *O'Brien.*)  These findings are supported by the record and are not challenged by Clark in this appeal.  Therefore, Clark is not entitled to a discharge for delay in bringing him to trial and the trial court did not err in denying his motion to dismiss for alleged speedy trial violations.

{¶50} We further note that the trial court went to great lengths to examine the chronology of this litigation, outlining every appearance and filing by either party.  The trial court counted "the days of delay chargeable to either side" as it was required to do under *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 8, and determined that the case was tried within applicable time limits.  Clark does not challenge the trial court's factual findings and calculations of the days of delay chargeable to either side.  He argues that simply because almost two years had passed between his charge and his conviction, and the

---

[10] The *O'Brien* court acknowledged that defendant's right to a speedy trial may be waived by his or her counsel.

> Similarly, an accused, or his counsel, may validly waive the speedy trial provisions of R.C. 2945.71 *et seq.* It follows, then, that a knowing, voluntary, express written waiver of an accused's statutory speedy trial rights may equate with a waiver of the coextensive constitutional rights, at least for the time period provided in the statute.

(Citations omitted.) *O'Brien*, 34 Ohio St.3d at 9; *see also State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 33; *State v. McRae*, 55 Ohio St.2d 149, 152, 378 N.E.2d 476 (1978) ("We therefore find the [*State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978)] holding to control the instant cause and that appellant is bound by his attorney's waiver of his constitutional right to a speedy trial.").

- 35 -

suppression motion was pending for four times the allowed amount, his speedy trial rights have been violated.

{¶51} Clark particularly relies on the fact that his motion was pending for nearly sixteen months. But he conveniently ignores the filings, hearings, and conferences that occurred in the meantime. The record shows that the trial court denied his motion in part on May 11, 2012. Thus, the trial court's initial ruling on the motion to suppress was "within the time parameters imposed by Superintendence Rule 40 A3." (R. at 30.) On May 14, 2012, Clark filed a motion to reconsider; on May 15, 2012, *both* parties "requested additional time to respond to the issue" (R. at 15); on May 22, 2012, Clark filed a supplemental memorandum; on July 23, 2012, the State requested a continuance with no objections from Clark and the delay not charged against the State. On the next scheduled date, October 3, 2012, the issue of the suppression was deemed heard and submitted; yet, on January 28, 2013, Clark filed another supplemental memorandum regarding his motion to suppress. Thus, Clark's assertion that there was a delay that lasted sixteen months is incorrect, as contradicted by the record and by the trial court's factual findings. Nevertheless, even if Clark were successful in establishing that some delay occurred in his case, the waiver of speedy time limits without limitation was effective to preclude granting of the motion to dismiss for speedy trial violations.

{¶52} Clark's filing of a motion to dismiss for speedy trial violations on August 6, 2013, revoked his prior waiver. *See Toledo v. Sauger,* 179 Ohio App.3d 285, 2008-Ohio-5810, 901 N.E.2d 826, ¶ 19 (6th Dist.). The trial court denied the motion on September 5, 2013, and he was brought to trial on September 24, 2013.

{¶53} For the above reasons, we do not find that Clark's right to a speedy trial was violated. The third assignment of error is overruled.

*Conclusion*

{¶54} Having reviewed the arguments, the briefs, and the record in this case, we find error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Findlay Municipal Court in Hancock County, Ohio is therefore reversed in part and affirmed in part, and we remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed in Part,*
*Affirmed in Part and*
*Cause Remanded*

**ROGERS, J., concurs.**

**/jlr**

**SHAW, J., dissents.**

{¶55} While I concur with the judgment of the majority that neither the appellant's arguments nor the cases analyzed are sufficient to demonstrate that the

statute at issue is unconstitutional, I dissent from the majority's opinion because I do not agree with their conclusion that the exclusionary rule might apply in this instance without regard to the constitutionality of the statute.

{¶56} The exclusionary rule was created as a judicial remedy for governmental violations of the Fourth Amendment. *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160 (1987) citing *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684 (1961). The "prime purpose" of the exclusionary rule is to deter unlawful police conduct. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613 (1974). "[T]he [United States] Supreme Court has held suppression is not an available remedy when police officers conducted a search in good faith reliance on some higher authority, such as a warrant *or a statute*, even if the warrant *or statute* were later held invalid or unconstitutional (the 'good faith exception')." (Emphasis added.) *United States v. Gonzalez*, 598 F.3d 1095 (9th Cir.2010), citing *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160 (1987).

{¶57} In *Illinois v. Krull*, the United States Supreme Court held that the exclusionary rule does not apply where an officer is acting in a good-faith reliance on the validity of a law, and that is exactly what happened in this case. *Krull*, 480 U.S. at 349. The police utilized a statute that this court has unanimously found is not unconstitutional and there is no indication that the officer did not comply with

the statute in obtaining the evidence at issue. It is both contrary to law and an abuse of judicial discretion for this court to remand this case to the trial court with instructions to consider application of the exclusionary rule in this circumstance. Accordingly, I would overrule the appellant's assignments of error and I would affirm the judgment of the trial court.